316 F.3d 904
 NATURAL RESOURCES DEFENSE COUNCIL, INC.; The Center for Marine Conservation, Inc., Plaintiffs-Appellees,
v.
Donald EVANS, Secretary of Commerce; The National Marine.
Fisheries Service; National Oceanic and Atmospheric Administration, Defendants-Appellants.
 No. 01-17143.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 4, 2002.
 Filed January 13, 2003.
 
 Todd S. Kim, U.S. Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the defendants-appellants.
 Andrew P. Caputo, Natural Resources Defense Council, Inc., San Francisco, California, for the plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California; James Larson, Magistrate Judge, Presiding. D.C. No. CV-01-00637-JL.
 Before RYMER, THOMAS and SILVERMAN, Circuit Judges.
 RYMER, Circuit Judge.
 
 
 1
 This appeal requires us to decide whether the Secretary of Commerce, acting through the National Marine Fisheries Service (NMFS), must provide notice and the opportunity for public comment before issuing specifications and management measures for the Pacific Coast Groundfish Fishery.
 
 
 2
 The Natural Resources Defense Council, Inc. (NRDC) and The Center for Marine Conservation, Inc., challenged NMFS's specifications and management measures for 2001 on the footing that they are subject to the notice and comment requirements of the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson Act), 16 U.S.C. §§ 1801-1883, and the Administrative Procedure Act (APA), 5 U.S.C. § 553(b)-(c), but that no such opportunity was given. The district court ruled that notice and comment was required by the Magnuson Act, and prospectively by the APA because NMFS had not properly invoked the statutory exception allowing agencies to forgo this requirement upon a showing of good cause. The Secretary of Commerce, NMFS, and the National Oceanic and Atmospheric Administration appeal.
 
 
 3
 We conclude that NMFS's recitation of good cause in 2001 was inadequate to excuse compliance with the APA's notice and comment requirement. As we have previously indicated, good cause requires some showing of exigency beyond generic complexity of data collection and time constraints; notice and comment must interfere with the agency's ability to fulfill its statutory mandate to manage the fishery. See Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479 (9th Cir.1992); Cal-Almond, Inc. v. United States Dep't of Agriculture, 14 F.3d 429 (9th Cir.1993). Given our determination that notice and comment was required under the APA for 2001, we do not need to decide whether it was also required under the Magnuson Act. Accordingly, we affirm the judgment in part and vacate in part.
 
 
 4
 * In 1976, Congress enacted the Magnuson Act as a response to overfishing and inadequate conservation measures that were threatening future commercial and recreational fishing, as well as the survival of a number of species of fish. See 16 U.S.C. § 1801(a). Among the purposes of the Magnuson Act are providing for "fishery management plans which will achieve and maintain, on a continuing basis, the optimum yield from each fishery," 16 U.S.C. § 1801(b)(4), and establishing Regional Fishery Management Councils to "prepar[e], monitor[], and revis[e] such plans." 16 U.S.C. § 1801(b)(5). The Secretary of Commerce (Secretary), acting through NMFS,[1] is responsible for reviewing fishery management plans (FMPs) and amendments to the plans for consistency with ten national standards set forth in 16 U.S.C. § 1851(a) and "any other applicable law." 16 U.S.C. § 1854(a)(1)(A). If approved, the Secretary publishes notice of the FMP or amendment in the Federal Register and promulgates regulations implementing the plan after a 60-day statutory comment period. 16 U.S.C. § 1854(a).
 
 
 5
 Likewise, the Secretary is responsible for evaluating "proposed regulations" submitted by the Regional Councils for consistency with the accompanying FMP and "any other applicable law," and must publish approved regulations in the Federal Register for a public comment period of 15 to 60 days before promulgating final regulations. 16 U.S.C. § 1854(b). The "proposed regulations" subject to this notice and comment provision are those "which the Council deems necessary or appropriate for the purposes of (1) implementing a fishery management plan or plan amendment" and "(2) making modifications to regulations implementing a fishery management plan or plan amendment." 16 U.S.C. § 1853(c). In addition, actions taken by NMFS constituting "rulemaking" under the APA are also subject to that statute's notice and comment provision, unless they qualify for one of the exceptions contained in that provision. See 5 U.S.C. § 551(5) (defining rulemaking under the APA as "agency process for formulating, amending, or repealing a rule"); 5 U.S.C. § 553. Final regulations promulgated by the Secretary, as well as "actions that are taken by the Secretary under regulations which implement a fishery management plan," are subject to judicial review. 16 U.S.C. § 1855(f).
 
 
 6
 In 1982, NMFS issued informal guidelines for preparing "framework fishery management plans and amendments" (framework FMPs), claiming that the review and implementation process provided by the Magnuson Act and other requirements of law was "often too slow for effective fishery management." As proposed by NMFS, framework FMPs would contain instructions to enable the Secretary to "make such changes as are needed from time to time to manage the fishery in accordance with the FMP", while still providing for participation by the Regional Councils.
 
 
 7
 The Pacific Fishery Management Council (Pacific Council) is authorized to prepare plans for the fisheries off the coasts of Washington, Oregon, California, and Idaho. 16 U.S.C. § 1852(a)(1)(F). In 1990, the Pacific Council proposed an amendment to the Pacific Coast Groundfish FMP (Groundfish FMP) adopting framework procedures (Amendment 4). NMFS subsequently approved the amendment, published it as a proposed rule, and, following the period for public comment, published the implementing regulations as a final rule in the Federal Register in January 1991. See 55 Fed. Reg. 38,105 (Sept. 17, 1990) (proposed rule); 56 Fed. Reg. 736 (Jan. 8, 1991) (final rule); see also 61 Fed. Reg. 34,570 (July 2, 1996) (reorganizing these regulations).
 
 
 8
 The annual management cycle described by the Groundfish FMP as modified by Amendment 4 consists of several steps taken in preparation for the next calendar year (which begins on January 1st). See 50 C.F.R. 660.302. The Pacific Council first gathers information about the state of the fishery throughout the year, then holds a public meeting in September at which, based upon the best available stock assessment information and public comment, it develops preliminary recommendations applicable to the following year. After the first meeting, the Pacific Council provides a summary of its preliminary recommendations and their basis to the public, and notifies the public of its intent to develop final recommendations at its second meeting, usually in November. At the second meeting the Pacific Council considers public testimony and adopts final recommendations for NMFS regarding harvest levels for each major fish species, as well as management measures such as gear regulations and trip frequency.[2] The Secretary then reviews the submission and, if approved, publishes a notice in the Federal Register making the Council's recommendations effective January 1st of the upcoming fishing year. The Groundfish FMP anticipates that the Secretary will "waive for good cause the requirement for prior notice and public comment in the Federal Register," as the Council process "will adequately satisfy that requirement."
 
 
 9
 The Pacific Council and NMFS[3] followed these procedures in recommending and issuing the specifications and management measures for 2001. That is, after holding two public meetings in September and October 2000, the Pacific Council submitted to NMFS its recommended specifications and management measures on December 13, 2000. NMFS approved the recommendations and published them in the Federal Register on January 11, 2001, stating that they were effective as of January 5, 2001, but inviting public comment through February 12, 2001. See 2001 Groundfish Fishery Specifications and Management Measures, 66 Fed. Reg. 2338 (Jan. 11, 2001). NMFS asserted there was good cause to waive prior notice and the opportunity for public comment under the APA on the grounds that delay in implementing management measures could be harmful to stock, that much of the data comes from the current year, and that these timing issues, together with the need to have the specifications and management measures in place by the beginning of the fishing year, were accommodated by the scheme adopted in Amendment 4.[4] NMFS further represented that prior notice and comment were not required "by any other law." NMFS has employed the same rationale for invoking the good cause exception since the adoption of framework procedures in 1991.[5]
 
 
 10
 On February 12, 2001, NRDC submitted a comment to NMFS that challenged the 2001 specifications and management measures as failing to take adequate account of bycatch mortality for the "severely overfished" bocaccio and lingcod fish populations, which resulted in setting inflated fishing harvest levels for these two species.[6] NRDC also claimed that NMFS violated the notice and comment provision of the Magnuson Act. On May 4, 2001, NMFS published "Corrections to Lingcod and Bocaccio Specifications," which adopted discard rate assumptions for lingcod and bocaccio and lowered the fishing harvest levels for these species. See Correction to the 2001 Specifications, 66 Fed. Reg. 22,467, 22,469 (May 4, 2001).
 
 
 11
 On January 25 and February 9, 2001, the NRDC and other plaintiffs filed two suits challenging, among other things, the validity of the 2001 groundfish specifications and management measures based on NMFS's failure to comply with the notice and comment requirements of both the Magnuson Act and the APA.[7] The two suits subsequently were consolidated, and the parties filed cross-motions for summary judgment after consenting to proceed before a magistrate judge. On August 20, 2001, the court granted summary judgment in part to NRDC and in part to NMFS. On the claims at issue in this appeal, the magistrate judge ruled that the 2001 specifications were "proposed regulations" prepared under 16 U.S.C. § 1853(c) and, thus, were procedurally invalid for failing to comply with the notice and comment requirement of the Magnuson Act, 16 U.S.C. § 1854(b)(1). The court further ruled that NMFS failed to establish good cause to depart from the APA's notice and comment requirement. It granted NRDC a declaratory judgment that "NMFS violated the [Magnuson Act] and the APA by not providing prior public notice and allowing for comment on the 2001 specifications after their publication by the Secretary," and "[a]n order that, in accordance with the [Magnuson Act] and the APA, NMFS provide prior public notice and allow comment on future Pacific groundfish specifications." This appeal followed.[8]
 
 II
 
 12
 The parties dispute whether the 2001 specifications and management measures recommended to NMFS by the Pacific Council constitute "proposed regulations" subject to the Magnuson Act's notice and comment requirement. However, both parties agree that independent of the Magnuson Act, the notice and comment requirement of the APA's rulemaking provision applies to the specifications and management measures. The APA-related dispute turns on whether NMFS properly invoked 5 U.S.C. § 553(b)(B), the good cause exception to that statute's notice and comment provision. We review de novo the district court's determinations on issues of statutory interpretation, including the scope of the notice and comment, and publication, requirements imposed by the APA. See Mada-Luna v. Fitzpatrick, 813 F.2d 1006, 1011 (9th Cir.1987). As we conclude that NMFS failed to establish good cause excusing the failure to provide notice and comment under the APA, we do not reach the Magnuson Act challenge.
 
 
 13
 * We must first address NMFS's contention that the question whether it validly invoked the good cause exception for the 2001 rules is moot, as the 2001 specifications and management measures have been supplanted by subsequent rules. NRDC contends that jurisdiction exists under the "capable of repetition, yet evading review" exception to mootness. NMFS's burden of demonstrating mootness is a heavy one. See Greenpeace Action v. Franklin, 14 F.3d 1324, 1329 (9th Cir.1992).
 
 
 14
 Government actions fall within the "capable of repetition, yet evading review" exception when "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." Id. at 1329; see also Bernhardt v. County of Los Angeles, 279 F.3d 862, 871-72 (9th Cir.2002). In Greenpeace, which involved an analogous situation, we held that although "total allowable catch" specifications for pollock issued by NMFS for the 1991 fishing season had expired, an action challenging the specifications as failing to take into account adverse effects on other sea life was "one of those extraordinary cases in which the complained of activity may be repeated and yet evade review." Greenpeace Action, 14 F.3d at 1329 (internal quotation marks omitted). There, we found persuasive the fact that the challenged specifications were in effect for less than a year, making it "difficult to obtain effective judicial review," as well as the fact that the same issue was likely to recur given the Secretary's pattern of reliance on the same disputed biological opinion. Id. at 1329-30. Similarly here, the one year time span for any given set of specifications and management measures renders it unlikely that any challenge to the rules will be fully litigated before they are replaced by a new set. Moreover, as the Groundfish FMP anticipates invocation of the good cause exception for every set of specifications and management measures, and because NMFS has repeated the same rationale for invoking the exception year after year, there is a reasonable expectation that the same issue will recur in future years. Accordingly, we conclude that this action is not moot.
 
 B
 
 15
 On the merits, NMFS argues that the district court erred by requiring all future groundfish specifications and management measures to undergo notice and comment under the APA. It points out that NRDC did not request relief regarding future agency actions that NMFS has yet to take. Furthermore, NMFS contends, the district court improperly assumed that future invocations of the good cause exception will be exactly the same as this one — which, it submits, is not necessarily so given that fishery conditions as well as the administrative record change from year to year. Finally, NMFS maintains that its showing of good cause was in fact sufficient.
 
 
 16
 NRDC notes that we construe APA exceptions narrowly, see Independent Guard Ass'n of Nevada, Local No. 1 v. O'Leary, 57 F.3d 766, 767 (9th Cir.1995), amended on other grounds, 69 F.3d 1038 (9th Cir.1995), and that we refused in Riverbend Farms to approve an agency's invocation of the good cause exception where it was required to issue regulations on a weekly basis. Riverbend Farms, 958 F.2d at 1487. Logically, in NRDC's view, the same result should obtain here, as it did in Cal-Almond where this court applied Riverbend Farms to an annual cycle. Cal-Almond, 14 F.3d at 441. In addition, relying on Hawaii Helicopter Operators Ass'n v. FAA, 51 F.3d 212 (9th Cir.1995), NRDC posits that the good cause exception should be restricted to rare cases of genuine emergency. Although NRDC questions the factual basis for NMFS's position that notice and comment would cause delay, NRDC suggests that even if NMFS is right, alternatives exist that would make time for notice and comment — for example, beginning the annual regulatory process earlier in the year or moving to a longer regulatory cycle. Lastly, it argues that notice and comment improves agency decision-making, as demonstrated by the agency's error in adopting zero-discard assumptions for bocaccio and lingcod in the 2001 specifications.
 
 
 17
 The APA provides that notice and comment may be waived by an agency when it "for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B).[9] Our inquiry into whether NMFS properly invoked "good cause" proceeds case-by-case, sensitive to the totality of the factors at play, and we have observed that notice and comment procedures should be waived only when "delay would do real harm." Hawaii Helicopter Operators Ass'n, 51 F.3d at 214 (internal quotation marks omitted). "Emergencies, though not the only situations constituting good cause, are the most common." Riverbend Farms, 958 F.2d at 1484 n. 2. Under the APA, notice and comment is not "impracticable" unless "the agency cannot `both follow section 553 and execute its statutory duties.'" Id. (quoting Levesque v. Block, 723 F.2d 175, 184 (1st Cir.1983)). Thus, as we held in Riverbend, "the good cause exception goes only as far as its name implies: It authorizes departures from the APA's requirements only when compliance would interfere with the agency's ability to carry out its mission." Id. at 1485.
 
 
 18
 NMFS has invoked the APA's good cause exception on the same basis for each set of annual specifications and management measures since the adoption of Amendment 4. On the one hand, this is understandable given that the public knows about Pacific Council hearings and prospective recommendations, and interested parties may attend those meetings and provide input; the procedure that has been followed for a decade was adopted after notice and comment and has never been challenged; and Amendment 4 itself anticipates the waiver of notice and comment. On the other hand, under the process that has been in place there is no notice or formal opportunity to comment to NMFS, which is the final decision-maker. In any event, NMFS failed to engage in any context-specific analysis of the circumstances giving rise to good cause in 2001 when it issued the 2001 specifications and management measures without notice and comment. Rather, it repeated the same generic timeliness concerns upon which it has relied each year, namely, that prior notice and comment would cause delay in the implementation of the rules given the time-sensitive data utilized in preparing them.
 
 
 19
 NMFS emphasizes the complexity of managing the Pacific Coast Fishery, given the ever-changing nature of the data upon which it relies to issue annual specifications and management measures. Although the intricacy of the rules may have some bearing on the good cause calculus, NMFS does not explain why prior notice and comment would have interfered with its ability to promulgate specifications and management measures in 2001, when approximately two months passed between the Pacific Council's final public meeting setting the final recommendations and their issuance by the Secretary in January 2001. If there were no good cause in Riverbend Farms for failure to publish notice of weekly meetings advising the public of proposed volume restrictions on the marketing of oranges, despite the fact that the committee responsible for recommending to the Secretary of Agriculture weekly volume restrictions was "constantly revising projections right up until, and occasionally even during, the week in question," Riverbend Farms, 958 F.2d at 1486, then, as we said in Cal-Almond, the timeliness considerations of rulemaking on an annual basis cannot constitute good cause. Cal-Almond, 14 F.3d at 441-42.
 
 
 20
 The outcome here follows from Cal-Almond. There, the United States Department of Agriculture (USDA) issued final rules containing budget estimates and assessment rates for the almond handling industry without first publishing a proposed rule and requesting comment, as required by the APA. Like NMFS's position here, the USDA argued that formulation of the budget and assessment rates could not be accomplished early enough to allow for notice and comment because the annual harvest forecast and proposed budget depended on crop projections for that year. We disagreed, stating that "[b]ecause we found no reason in Riverbend Farms to depart from the notice-and-comment procedure for weekly meetings and rules, we can discern no good cause here for the Secretary's failure to follow the procedure for annual meetings and rules." Id. at 442 (emphases in original).
 
 
 21
 We need not determine the precise contours of what constitutes good cause in this context. We simply hold that NMFS failed to make a sufficient showing that good cause existed for 2001, as the agency did not demonstrate that some exigency apart from generic complexity of data collection and time constraints interfered with its ability to promulgate specifications and management measures.
 
 
 22
 By the same token, we do not mean to suggest that habitual invocation of the good cause exception is itself improper. NMFS argues that the district court's order is overbroad to the extent that it can be interpreted as requiring notice and comment in future years notwithstanding the good cause exception. Arguably the court's order is susceptible to this implication, which we disapprove. NMFS should be free in future years to show that compliance is impracticable under specific circumstances pertinent to the year at issue.[10]
 
 
 Conclusion
 
 
 23
 We affirm the district court's ruling that NMFS failed to comply with the APA's notice and comment requirement in issuing the 2001 specifications and management measures, and vacate that portion of the ruling requiring all future specifications and management measures to undergo notice and comment under the APA without considering the agency's articulated reasons establishing good cause to avoid that procedure. Given this disposition, we decline to reach the issue whether NMFS also violated the Magnuson Act's notice and comment provision.[11] Accordingly, we vacate that portion of the order holding that NMFS violated the Magnuson Act, as well as the prospective relief it granted with regard to the Magnuson Act.
 
 
 24
 AFFIRMED IN PART; VACATED IN PART.
 
 
 
 Notes:
 
 
 [1]
 NMFS is a sub-agency of the National Oceanic and Atmospheric Administration (NOAA), which itself is a branch of the Department of Commerce
 
 
 [2]
 The Groundfish FMP actually establishes procedures for developing four different types of management measures, ranging from automatic actions requiring only publication in the Federal Register to full rulemaking actions requiring two Pacific Council meetings and notice and comment. The procedure just described is pertinent to the measures at issue in this case
 
 
 [3]
 In describing the actions taken by the various governmental entities in promulgating annual rules, from this point forward we refer to NMFS, NOAA, and the Secretary simply as NMFS, except where indicated otherwise
 
 
 [4]
 The good cause statement in full is as follows:
 This package of specifications and management measures is a delicate balance designed to allow as much harvest of healthy stocks as possible, while protecting overfished and other depressed stocks. Delay in implementation of the measures could upset that balance and cause harm to some stocks and it could require unnecessarily restrictive measures later in the year to make up for the late implementation.
 Much of the data necessary for these specifications and management measures came from the current fishing year. The Assistant Administrator for Fisheries, NOAA (AA) has determined that there is good cause under 5 U.S.C. [§]553(b)(B) to waive prior notice and opportunity for public comment for the specifications and management measures. Because of the timing of the receipt, development, review, and analysis of the fishery information necessary for setting the initial specifications and management measures, and the need to have these specifications and management measures in effect at the beginning of the 2001 fishing year, Amendment 4 to the FMP, implemented on January 1, 1991, recognized these timeliness considerations and set up a system by which the interested public is notified, through Federal Register publication and Council mailings, of Council meetings and of the development of these measures and is provided the opportunity to comment during the Council process .... Additional public comments on the specifications and management measures will be accepted for 30 days after publication of this document in the Federal Register.
 
 
 [66]
 Fed. Reg. 2338, 2371-72
 
 
 [5]
 See 2000 Groundfish Fishery Specifications and Management Measures, 65 Fed. Reg. 221, 248-49 (Jan. 4, 2000); 1999 Groundfish Fishery Specifications and Management Measures, 64 Fed. Reg. 1316, 1340 (Jan. 8, 1999); 1998 Groundfish Fishery Specifications and Management Measures, 63 Fed. Reg. 419, 443 (Jan. 6, 1998); 1997 Groundfish Fishery Specifications and Management Measures, 62 Fed. Reg. 700, 720 (Jan. 6, 1997); 1996 Groundfish Fishery Specifications and Management Measures, 61 Fed. Reg. 279, 290 (Jan. 4, 1996); 1995 Groundfish Fishery Specifications and Management Measures, 60 Fed. Reg. 2331, 2344 (Jan. 9, 1995); 1994 Groundfish Fishery Specifications and Management Measures, 59 Fed. Reg. 685, 698 (Jan. 6, 1994); 1993 Groundfish Fishery Specifications and Management Measures, 58 Fed. Reg. 2990, 2998 (Jan. 7, 1993); 1992 Groundfish Fishery Specifications and Management Measures, 57 Fed. Reg. 1654, 1662 (Jan. 15, 1992).
 
 
 [6]
 "Bycatch" in this context refers to the practice of discarding fish over-board from a fishing boat when, for example, a boat catches more fish than permitted under its quota. Discarded fish often do not survive the trauma associated with being pulled from the depths of the ocean only to be thrown back in
 
 
 [7]
 The Center for Marine Conservation joined the challenge to the specifications and management measures. The Pacific Marine Conservation Council joined the challenge to an unrelated amendment to the Groundfish FMP
 
 
 [8]
 While the order appealed from is characterized as an "Order Granting Partial Summary Judgment for Plaintiffs and Defendants," the parties represent, and a review of the record confirms, that the order resolved all claims as to all parties. Thus, we have jurisdiction under 28 U.S.C. § 1291See In re Slimick, 928 F.2d 304, 308 (9th Cir.1990) ("Appealability turns on the effect of the ruling, not the label assigned to it by the trial court.").
 
 
 [9]
 NMFS also invoked the separate good cause waiver for the APA rule that an agency should wait at least thirty days after announcement of a final rule before making it effectiveSee 5 U.S.C. § 553(d)(3). However, NRDC does not challenge NMFS's reliance on this exception in this case.
 
 
 [10]
 We recognize our obligation to take "due account" of whether the failure to submit the 2001 specifications and management measures for notice and comment is harmless. Neither party briefed the issue. We take this as a concession by NMFS that it cannot be said that "`the agency's mistake "clearly had no bearing on the procedure used or the substance of decision reached."'"Cal-Almond, 14 F.3d at 442 (quoting Riverbend Farms, 958 F.2d at 1487 (quoting Sagebrush Rebellion, Inc. v. Hodel, 790 F.2d 760, 764-65 (9th Cir.1986))).
 
 
 [11]
 We acknowledge that the two notice and comment provisions are not substantively identical, as the APA allows agencies to skirt notice and comment with good cause, while the Magnuson Act does not. If at some point NMFS validly invokes the APA's good cause exception, then it may be necessary to consider whether the Magnuson Act separately requires notice and comment. However, there is no need to reach the issue with regard to the particular specifications and management measures that are before us now