FARRIS, Senior Circuit Judge:
Christopher Dean appeals his guilty plea to the charge of having traveled in interstate commerce and knowingly failing to register as a sex offender under the Sex Offender Registration and Notification Act, in violation of 18 U.S.C. § 2250(a) (2006). Dean asserts that the Attorney General did not have good cause to promulgate a rule making SORNA retroactive without notice and comment as required by the Administrative Procedure Act. We have jurisdiction under 28 U.S.C. § 1291(2006) and 18 U.S.C. § 3742(a)(1) (2006). We affirm.
I.
On January 18, 1994, Dean was convicted of criminal sexual conduct in the third degree in Minnesota. As a result of the conviction, Dean was required to register as a sex offender. Dean relocated to Montana in 2003 and registered as a sex offender there. Dean then subsequently relocated to Georgia and registered in 2005 as a sex offender and provided notice to Montana. Dean traveled to Alabama sometime between July 2007 and August 2007 and failed to register as a sex offender there. Dean was arrested in Alabama for failing to register. On March 14, 2008, Dean was charged in federal district court with one count of having traveled in interstate commerce and knowingly failing to register as a sex offender as required by SORNA, in violation of 18 U.S.C. § 2250(a).
Dean moved to dismiss his indictment in the district court, arguing that SORNA was invalid under the Administrative Procedure Act, non-delegation doctrine, and Commerce Clause, Ex Post Facto Clause, and Due Process Clause of the Constitution. The district court denied Dean’s motion to dismiss. Dean then pled guilty to the charge, was sentenced to time served, and filed this timely appeal. Dean is not currently incarcerated but is subject to supervised release.
II.
Congress enacted the Sex Offender Registration and Notification Act, which became effective on July 27, 2006. 42 U.S.C. § 16901 (2006). SORNA mandated that all states maintain a sex offender registry and set a deadline for states to implement SORNA before July 27, 2009. 42 U.S.C. *1277 §§ 16912, 16924 (2006). SORNA sets out an initial registration requirement for sex offenders in 42 U.S.C. § 16913(b) (2006). Subsection (b) provides that:
The sex offender shall initially register—
(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
Id. SORNA also provides specifically, under § 16913(d): Initial registration of sex offenders unable to comply with subsection (b) of this section, that:
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.
42 U.S.C. §§ 16913(b), (d).
On February 28, 2007, the Attorney General promulgated an interim rule pursuant to § 16913(d) making SORNA retroactive to all sex offenders convicted prior to SORNA’s enactment. 28 C.F.R. § 72.3 (2007). In promulgating the rule, the Attorney General invoked the “good cause” exceptions of the Administrative Procedure Act at 5 U.S.C. §§ 553(b)(3)(B) and (d)(3) and did not have a pre-promulgation notice and comment period. 72 Fed.Reg. 8894, 8896-7 (2007).
The Attorney General issued a statement of good cause with the rule, noting the practical dangers of additional sexual assaults and child sexual abuse or exploitation offenses if SORNA were not made immediately retroactive:
The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act’s requirements — and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required — to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of “protecting] the public from sex offenders and offenders against children” by establishing “a comprehensive national system for the registration of those offenders,” SORNA § 102, because a substantial class of sex offenders could evade the Act’s registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.
It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. 553(b) or with the delayed effective date normally required under 5 U.S.C. 553(d).
Id. at 8896-97. The rule took effect immediately. Id. at 8895. The Attorney Gener *1278 al accepted post-promulgation comments on the rule through April 30, 2007. Id.
III.
We review a district court’s denial of a motion to dismiss for abuse of discretion. United States v. Madera, 528 F.3d 852, 855 (11th Cir.2008). Additionally, we review “questions of statutory interpretations de novo, although an agency’s interpretive guidance construing a statute is entitled to deference ‘proportional to its power to persuade.’ ” Warshauer v. Solis, 577 F.3d 1330, 1335 (11th Cir.2009). Agency actions under the APA are reviewed under the “arbitrary and capricious standard, which provides the reviewing court with very limited discretion to reverse an agency decision.” Id. (citations omitted).
Dean argues that (1) SORNA is not a valid exercise of Congress’s Commerce Clause power because the regulated activity does not have a substantial effect on interstate commerce nor does it involve or affect the channels or instrumentalities of interstate commerce; (2) SORNA is an improper delegation of legislative power; and (3) the government did not notify Dean of the requirement for him to register as a sex offender. He concedes that we addressed his arguments on point in United States v. Ambert, 561 F.3d 1202 (11th Cir.2009). Ambert rejected both Commerce Clause claims, the non-delegation claim, and the due process claim. Ambert, 561 F.3d at 1208-14. Furthermore, “only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision.” Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cm. 1997). As Ambert has not been overturned by this Court sitting en banc or by the Supreme Court, we are bound by Ambert. Dean’s constitutional arguments therefore must fail. See Ambert, 561 F.3d at 1208-15; United States v. Brown, 586 F.3d 1342, 1351 (11th Cir.2009).
IV.
Dean’s remaining argument is that the Attorney General’s rule that SORNA applied retroactively did not comply with the requirements of the APA. Dean does not dispute that SORNA would apply to him if the rule making it retroactive is valid. Whether the Attorney General had good cause to bypass the notice and comment requirements of the APA is an issue of first impression in this Court and one that has split our sister circuits. See United States v. Gould, 568 F.3d 459 (4th Cir. 2009), cert. denied, — U.S. —, 130 S.Ct. 1686, 176 L.Ed.2d 186, 2010 WL 680575 (2010); United States v. Cain, 583 F.3d 408 (6th Cir.2009).
The APA provides that there should be notice and comment before the promulgation of any rule. 5 U.S.C. § 553 (2006). The purpose of the notice provision is to “disclose the thinking of the agency and the data relied on.” Lloyd Noland Hospital and Clinic v. Heckler, 762 F.2d 1561, 1565 (11th Cir.1985). Furthermore, notice and comment “allow[s] an agency to reconsider, and sometimes change, its proposal based on the comments of affected persons.” Miami-Dade County v. United States Environmental Protection Agency, 529 F.3d 1049, 1059 (11th Cir.2008).
The Attorney General concedes that he did not follow the standard notice and comment procedures required by the APA. Instead, the Attorney General invoked the “good cause” exceptions contained at 5 U.S.C. §§ 553(b)(3)(B) and (d)(3). 72 Fed.Reg. 8894, 8896 (2007). The good cause exceptions allow the agency to skip notice and comment “when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, un *1279 necessaiy, or contrary to the public interest.” 5 U.S.C. § 553(b)(3)(B).
We have indicated previously that the good cause exception “should be read narrowly.” United States Steel Corp. v. United States Environmental Protection Agency, 595 F.2d 207, 214 (5th Cir.1979)[1]; see also Jifry v. F.A.A., 370 F.3d 1174, 1179 (D.C.Cir.2004) (indicating that the exception should be “narrowly construed and only reluctantly countenanced”). The exception is, however, “an important safety valve to be used where delay would do real harm.” United States Steel Corp., 595 F.2d at 214. In United States Steel Corp., we noted that “[u]se of the exception has repeatedly been approved, for example, in cases involving government price controls, because of the market distortions caused by the announcement of future controls. The exception was also held applicable to regulations concerning gas stations, where temporary shortages and discriminatory practices were found to have deprived some users of any supply and led to violence.” Id. at 214 n. 15 (citations omitted).
The Attorney General’s two reasons for good cause both relate to the public interest. He asserts that the rule (1) provides guidance to eliminate uncertainty; and (2) prevents the delay in registration of sex offenders who would evade the registration requirements during the notice and comment period, commit additional sexual assaults, and be harder to apprehend. 72 Fed.Reg. at 8896-97.
Only two other circuits have addressed this issue, and they reached different conclusions.[2] United States v. Gould, 568 F.3d 459, 470 (4th Cir.2009), upheld the Attorney General’s invocation of good cause to bypass the notice and comment requirements for the rule making SORNA retroactive. The Gould court held that “[t]here was a need for legal certainty about SORNA’s ‘retroactive’ application to sex offenders convicted before SORNA and a concern for public safety that these offenders be registered in accordance with SORNA as quickly as possible.” Id. In particular the court found that “[d]elaying implementation of the regulation to accommodate notice and comment could reasonably be found to put the public safety at greater risk.” Id. The court also noted that the Attorney General allowed post-promulgation comments, which were addressed in the proposed National Guidelines issued in May 2007 and in the final National Guidelines issued in May 2008. Id.
The Sixth Circuit disagreed in United States v. Cain, 583 F.3d 408 (6th Cir.2009). The defendant in Cain was indicted for failing to register no more than 30 days after the February 27, 2007 effective date of the rule making SORNA retroactive. Id. at 411. The Sixth Circuit concluded that uncertainty was not good cause because every regulation is designed to provide some type of guidance. Id. at 421. It also concluded that Congress had already built in some amount of uncertainty and delay into the design of the statute. Id. The court highlighted the Attorney General’s own seven-month delay in issuing the regulation. Id. The court concluded that Congress had already balanced the. costs and benefits of delay in not exempting SORNA from APA procedures. Id. The court contrasted this situation with a situa *1280 tion where an agency is facing a statutory deadline. Id.
The Cain court then turned to the Attorney General’s safety justification. Id. at 422. The court noted several cases where safety concerns justified bypassing the notice and comment period. Id. However, the court indicated that the safety concern had previously been used when the “emergency situation arose after the statutory enactment at issue.” Id. It also noted that agencies have previously given specific reasons “to conclude that [their] regulations insufficiently protected public safety, and those reasons arose after the existing regulations went into effect.” Id. The court concluded that the “Attorney General gave no specific evidence of actual harm to the public in his conclusory statement of reasons, and gave no explanation for why he could act in an emergency fashion when Congress had not deemed the situation so critical seven months earlier.” Id.
The Cain court also noted the dissent in Gould and indicated that it thought the dissent properly applied the APA. Id. It is noteworthy that the defendant in Cain was indicted for failing to register as early as March 28, 2007, which was less than 30 days after the effective date of the retroactivity rule, effective February 28, 2007. Id. at 411. The Sixth Circuit took “no position on whether the same would be true for a defendant who failed to register during a period more than thirty days after publication of the regulation.” Id. at 424 n. 7. Here, Dean was indicted in March 2008 for failing to register between July and August 2007, which was more than 30 days after the retroactivity rule’s effective date. So part of Cain’s holding relating to § 553(d)(3) is inapplicable to this case. Nonetheless, we recognize that the Sixth Circuit subsequently has now extended Cain to apply to defendants even though the thirty-day advanced publication requirement is met. See United States v. Utesch, 596 F.3d 302 (6th Cir.2010). Dean adopts the Cain majority’s and the Gould dissent’s position.
We address the Attorney General’s guidance argument first. We have addressed a somewhat similar guidance argument previously. In United States Steel Corp., the EPA alleged that an immediate rule without notice and comment was necessary to provide guidance to the states. 595 F.2d at 214. We found the need to provide guidance rationale faltered because States already had most of the information the EPA rule provided, the designations at issue were actually based on submissions by the States, and the EPA’s role “is limited to reviewing the state designations and modifying them where necessary.” Id.
In stark contrast, the agency here was granted sole discretion to determine whether SORNA applies retroactively, and there was no guidance at all in place in that matter. The guidance rationale is particularly important here as the persons who were affected by the rule were already convicted of their prior crimes and need to know whether to register. As the Fourth Circuit said, “[t]here was a need for legal certainty about SORNA’s ‘retroactive’ application.” Gould, 568 F.3d at 471. While this reason alone may not have established the good cause exception, it does count to some extent.
We do, however, find unpersuasive the argument that post-promulgation comments were sufficient to ameliorate the lack of pre-promulgation notice and comment. We previously rejected this harmless error argument in United States Steel Corp., 595 F.2d at 214. In particular, we noted that “[s]ection 553 is designed to ensure that affected parties have an opportunity to participate in and influence agency decision making at an early stage, when *1281 the agency is more likely to give real consideration to alternative ideas.” Id. at 214. We held that allowing post-promulgation comments to resolve any harm caused by a lack of notice and comment would render the notice and comment provision toothless. Id. at 215. The post-promulgation comments allowed by the Attorney General do not rectify the lack of pre-promulgation notice and comment.
We now turn to the Attorney General’s public safety justification. We conclude that the public safety argument advanced by the Attorney General is good cause for bypassing the notice and comment period. Retroactive application of the rule allowed the federal government to immediately start prosecuting sex offenders who failed to register in state registries., 73 Fed. Reg. at 38063. In practical terms, the retroactive rule reduced the risk of additional sexual assaults and sexual abuse by sex offenders by allowing federal authorities to apprehend and prosecute them. The retroactive application of SORNA also removes a barrier to timely apprehension of sex offenders.
The majority in Cain reads two cases, one from the D.C. Circuit and one from the Ninth Circuit, to hold that the safety prong of the good cause exception can only be invoked in emergency situations. See Cain, 583 F.3d at 422. However, the D.C. Circuit has noted that “the exception excuses notice and comment in emergency situations, or where delay could result in serious harm.” Jifry, 370 F.3d at 1179 (citation omitted and emphasis added). Similarly, the Ninth Circuit has noted that “notice and comment procedures should be waived only when delay would do real harm. Emergencies, though not the only situations constituting good cause, are the most common.” Natural Resources Defense Council, Inc. v. Evans, 316 F.3d 904, 910 (9th Cir.2003) (citations and quotation marks omitted). Both of these decisions are consistent with our precedent in United States Steel Corp., where we indicated that the good cause exceptions were “to be used where delay would do real harm.” 595 F.2d at 214. We hold that there does not need h> be an emergency situation and the Attorney General only has to show that there is good cause to believe that delay would do real harm.
The dissent in Gould argues the retroactive application of SORNA does not improve public safety because it does not compel additional registration and “merely allowed the federal government to prosecute under SORNA sex offenders who were currently violating state registration laws.” Gould, 568 F.3d at 478 (Michael, J., dissenting). This argument is premised on the notion that those who failed to register are subject to state prosecution already, and that is sufficient for public safety. We are not persuaded. Public safety is improved by federal law that allows the federal government to pursue sex offenders regardless of existing state laws providing for state prosecution. SORNA brings to bear the power of federal law enforcement, including the United States Marshals Service, to assist in locating and apprehending sex offenders who fail to register. See 42 U.S.C. § 16941. The additional criminal sanction also increases the likelihood of registration. Furthermore, Congress has already made the judgment that a federal law for tracking sex offenders, in addition to existing state law, would improve public safety.
Another argument advanced in the Gould dissent is that Megan’s Law, 42 U.S.C. § 14071, sufficiently protects public safety because it allows the federal government to prosecute sex offenders who fail to register under a state’s sexual offender registration program and who change their address to another state. See 42 U.S.C. § 14072(g); Gould, 568 F.3d at 477-78 (Michael, J., dissenting). But Megan’s *1282 Law’s scope is substantially narrower and less comprehensive than SORNA’s.
First, SORNA expands the definition of sex offender to include previously uncovered offenders including foreign offenders and some juvenile offenders. Compare 42 U.S.C. §§ 16911(5), (7), (8) with 42 U.S.C. § 14071(3). Second, the penalties imposed under Megan’s Law are substantially more lenient than the penalties under SORNA. The penalty.for a violation of Megan’s Law is a maximum of one year in prison for the first offense and ten years for second and subsequent offenses. 42 U.S.C. § 14072(i). SORNA’s penalty provision allows for a maximum of ten years’ imprisonment regardless. 18 U.S.C. § 2250(a)(3). SORNA also adds additional punishment if the sex offender commits a crime of violence. This additional punishment is a mandatory minimum of five years in prison with a statutory maximum of 30 years. 18 U.S.C. § 2250(c). These distinctions make SORNA a farther reaching statute and increase public safety.
The majority in Cain also reasoned that Congress built in a period of delay and the Attorney General delayed seven-months; therefore delay cannot constitute good cause. Cain, 583 F.3d at 421. We disagree. Ml Congressional directives to an agency to implement rules are subject to delay as the agency considers the rule and then promulgates it. If Congress were required to create the substantive administrative rules by itself to avoid notice and comment, then the good. cause exception would be meaningless. An agency could never demonstrate good cause since delay is inevitably built in as the agency brings its expertise to bear on the issue. The question is whether further delay will cause harm, and here it was reasonably determined that waiting thirty additional days for the notice and comment period to pass would do real harm.
The final argument advanced against bypassing notice and comment is that “the harm to the general public would result from delay assumes that it was inevitable that [the Attorney General] would declare that SORNA applied retroactively.” See Gould, 568 F.3d at 479 (Michael, J., dissenting). This is true of any rule that bypasses the notice and comment provision. The harm to the public from delay is premised on the promulgated rule staying as is even through the notice and comment phase. This argument is also premised on the idea that the rule creates the harm. Id. (arguing that “[i]f the Attorney General had promulgated a rule that SORNA does not apply to past sex offenders ..., no possible harm to the public would have resulted”). However, the harm exists already. Sex offenders are not registering with state jurisdictions. Since the good cause exception already assumes that the regulation will remain in place, this argument is not a reason to reject an invocation of the exception.
The Attorney General had good cause to bypass the Administrative Procedure Act’s notice and comment requirement.
AFFIRMED.

. Decisions of the Fifth Circuit prior to the Eleventh Circuit’s split from the Fifth Circuit are binding on the Eleventh Circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1207 (11th Cir.1981) (enbanc).

. See also United States v. Dixon, 551 F.3d 578, 583 (7th Cir.2008) (noting in passing that Dixon’s APA challenge to SORNA was ''frivolous” but not discussing the challenge).