# United States Court of Appeals
## For the First Circuit

No. 11-1194

UNITED STATES OF AMERICA,

Appellee,

v.

BRIAN PARKS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Boudin and Thompson,

Circuit Judges.

J. Hilary Billings, Assistant Federal Defender, Federal Defender Office, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief for appellee.

October 16, 2012

**BOUDIN**, **Circuit Judge**.  Brian Parks was convicted under the U.S. Criminal Code, 18 U.S.C. § 2250(a) (2006), for traveling in interstate commerce and then knowingly failing to update his sex offender registration at his destination as required by the Sex Offender Registration and Notification Act ("SORNA"), Pub. L. No. 248, tit. I, 120 Stat. 587, 590-611 (2006) (codified primarily at 18 U.S.C. § 2250 and 42 U.S.C. §§ 16901-16962).  He now appeals to challenge his conviction and his sentence.

Prior to his travel-and-failure-to register offense now at issue, Parks had been convicted of sexual offenses in Massachusetts, one in January 1990, and another in June 1996.  He was notified in writing on September 21, 2006, of his duty to register under SORNA.  He initially registered in Massachusetts but then failed to register in Maine when, at some point in 2009, he began to reside in Maine.  Parks was warned to register in Maine by a policeman who encountered him there in August 2009, but he ignored the warning.

On February 8, 2010, Maine police discovered that Parks had been living at a motel in Maine since November 21, 2009, and that there were warrants out for his arrest on a probation-violation charge in Massachusetts, apparently for having failed to update his registration in that state in July 2009.  He was arrested and was returned to Massachusetts.  There he admitted to

the Massachusetts probation violation and was sentenced by a Massachusetts state court to two and a half years in prison.

In May 2010, Parks was indicted by a federal grand jury in Maine on one count of traveling in interstate commerce and knowingly failing to update a registration as required by SORNA, 18 U.S.C. § 2250(a). After the district court denied Parks' several challenges to SORNA, he pled guilty conditioned on his right to appeal the legal objections urged in his failed motion to dismiss. Thereafter he was sentenced by the district court to 35 months' imprisonment consecutive to his state sentence for violating probation. He now appeals to pursue his reserved contentions.

SORNA was enacted in July 2006 under Congress' Commerce Clause power to create "a comprehensive national system for the registration of [sex] offenders," 42 U.S.C. § 16901; the statute requires sex offenders to register, and to keep their registrations current, in each jurisdiction where they reside, work, or attend school. Id. §§ 16913(a) & (c). SORNA imposes criminal sanctions on convicted sex offenders subject to its registration requirements who travel in interstate commerce and knowingly fail to register or update their registrations. 18 U.S.C. § 2250(a).

By its own terms, SORNA's registration requirements applied automatically to individuals who committed a triggering sexual offense after the statute's enactment in July 2006. The Attorney General was told to decide whether SORNA should be applied

-3-

to those who committed their triggering sexual offense <u>before</u> SORNA's enactment. 42 U.S.C. § 16913(d). The Attorney General ruled that it should so apply.[1] But just when this approval became effective was the subject of dispute and was answered only recently by the Supreme Court in <u>Reynolds</u> v. <u>United States</u>, 132 S.Ct. 975 (2012), resolving a circuit split on the matter. <u>Id</u>. at 981.

In <u>Reynolds</u> the Supreme Court held that SORNA's prohibition of travel and failure to register applied to pre-SORNA sexual offenders like Parks only where the travel and non-registration occurred after the Attorney General's approval had occurred, rather than from the date of SORNA'S enactment. 132 S.Ct. at 984. The Supreme Court did not, however, determine whether this approval should be deemed effective in February 2007, when an Interim Rule was promulgated on an emergency basis to make SORNA applicable to pre-SORNA sexual offenses, or on August 1, 2008, when the so-called SMART guidelines issued by the Attorney General became effective.

---

[1]Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3); The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030 (July 2, 2008).

The circuits are in disagreement about this issue,[2] and our circuit has not yet addressed it because, like four other circuits, we had previously believed that SORNA applied to pre-Act offenders from the moment of its enactment. However, several of our decisions resting on this premise were vacated after Reynolds: United States v.DiTomasso, 621 F.3d 17 (1st Cir. 2010), vacated, 132 S.Ct. 1533 (2012); United States v. Stevens, 640 F.3d 48 (1st Cir. 2011), vacated, 132 S.Ct. 1739 (2012); United States v. Gagnon, 621 F.3d 30 (1st Cir. 2010), vacated, 132 S. Ct. 1533 (2012).

Conversely, the Supreme Court denied certiorari on a similar case from this circuit in which the offender traveled after the Interim Rule but before the SMART regulations. United States v. Thompson, 431 Fed. App'x 2 (1st Cir. 2011), cert. denied, 132 S. Ct. 1739 (2012). This might suggest that the Supreme Court agrees with the circuits supporting the Interim Rule date but it has not formally decided the issue and we have no occasion to resolve it here, since Parks would be covered whether the Interim Rule date or the 2008 SMART guidelines date controlled.

---

[2]Compare United States v. Dean, 604 F.3d 1275, 1282 (11th Cir), cert. denied, 131 S. Ct. 642 (2010) (finding that the Interim Rule governs), and United States v. Gould, 568 F.3d 459, 470 (4th Cir. 2009), cert. denied, 130 S. Ct. 1686 (2010) (same), with United States v. Utesch, 596 F.3d 302, 310 & 311 n.8 (6th Cir. 2010) (finding that the 2008 action governs), and United States v. Valverde, 628 F.3d 1159, 1169 (9th Cir. 2010), cert. denied, 132 S. Ct. 1534 (2012) (same).

Thus, Parks pled guilty to an indictment alleging that he traveled in interstate commerce and knowingly failed to update his registration between November 21, 2009, and February 7, 2010, long after the 2008 SMART guidelines were promulgated by the Attorney General, and Parks makes no argument that the registration requirements took effect on an even later date. Parks suggests that we remand the matter to the district court for further consideration but does not explain what purpose would be served by a remand.

Reynolds--a statutory interpretation decision--does not address Parks' separate claim on appeal that applying SORNA to him violates the Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 3. The most familiar argument in this vein--that Congress cannot criminalize conduct after it occurs--does not operate here because while Parks' sexual offenses occurred pre-SORNA, the travel and failure to register for which he was punished occurred after SORNA. Thompson, 431 Fed. App'x at 4. Rather, Parks invokes the Ex Post Facto Clause by arguing that SORNA's registration requirements impermissibly increase his punishment for his earlier sexual offenses--an issue of law which we consider de novo.

The Ex Poste Facto argument turns on whether SORNA is deemed a civil regulatory measure aiming at forestalling future harm or is instead punitive either in its purpose or effect. See Smith v. Doe, 538 U.S. 84, 92 (2003). If the sole issue were

professed legislative purpose, the answer would be obvious: the Act clearly states that its purpose is to "protect the public from sex offenders and offenders against children . . . [by] establish[ing] a comprehensive national system for the registration of those offenders."  42 U.S.C. § 16901.  The mechanics of the statute's registration scheme are consistent with this preventive aim.

The Supreme Court has said that we "ordinarily defer to the legislature's stated intent . . . [and] only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Smith, 538 U.S. at 92 (quoting Kansas v. Hendricks, 521 U.S. 346, 361 (1997) and Hudson v. United States, 522 U.S. 93, 100 (1997) (internal quotation marks omitted)).  But, in principle, a statute declared by Congress to be regulatory rather than punitive can still be re-christened by a court under some circumstances.  Thus, Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963), asks whether a scheme

> -imposes an affirmative disability or restraint;

> -has been regarded in our history and traditions as a punishment;

> -comes into play only on a finding of scienter;

> -promotes the traditional aims of punishment;

> -applies to behavior that is already a crime;

-7-

-has a rational connection to a nonpunitive purpose; and

-is excessive with respect to this purpose.

SORNA is surely burdensome for those subject to it. A sex offender must register in each jurisdiction where he resides, works, or goes to school, 42 U.S.C. § 16913(a), and he must periodically appear in person to verify and update certain information,[3] and also to be photographed. Id. § 16916. Given his offenses, Parks will have to do this every three months for the rest of his life, id. §§ 16915(a), 16916(b), although the period may be reduced if he fulfills certain requirements. Id. § 16915(b).

SORNA also establishes an online federal sex offender database (which is publically available) and instructs individual jurisdictions to establish their own similar databases, which include the offender's name, physical description, photograph, criminal offense, criminal history, and any other information required by the Attorney General. 42 U.S.C. §§ 16914, 16918, 16919, 16920. The prospective disadvantages to Parks from such publicity are obvious.

---

[3]When he registers, an offender must be fingerprinted and provide his name, any aliases, his social security number, the address of each residence where he resides or will reside, the name and address of any place where he is an employee or will be an employee, the name and address of any place where he is a student or will be a student, the license plate number and a description of any vehicle he owns or operates, and any other information required by the Attorney General. 42 U.S.C. § 16914.

However, in Smith, the Supreme Court found that Alaska's nearly identical registration requirement served to "make a valid regulatory program effective and [did] not impose punitive restraints in violation of the Ex Post Facto Clause." 538 U.S. at 102. The main distinction is that SORNA requires that Parks appear in person to register and update registration, 42 U.S.C. § 16916, while--as Smith itself noted--the Alaska statute did not and the Ninth Circuit, which had found the Alaska scheme unconstitutional, "was under a misapprehension, albeit one created by the State itself during the argument below, that the offender had to update the registry in person." 538 U.S. at 101.

To appear in person to update a registration is doubtless more inconvenient than doing so by telephone, mail or web entry; but it serves the remedial purpose of establishing that the individual is in the vicinity and not in some other jurisdiction where he may not have registered, confirms identity by fingerprints and records the individual's current appearance. Further, the inconvenience is surely minor compared to the disadvantages of the underlying scheme in its consequences for renting housing, obtaining work and the like--consequences that were part of the package that Smith itself upheld.

Admittedly, SORNA's registration requirement arises at the time of criminal sentencing, and it is imposed in direct response to conviction for a criminal act; but this was equally

true in Smith, which said that "[t]he policy to alert convicted offenders to the civil consequences of their criminal conduct does not render the consequences themselves punitive." Smith, 538 U.S. at 95-96. Registration is frequently part of civil regulation, including car licensing, social security applications, and registering for selective service.

Parks' only hope is the last of the Mendoza-Martinez criteria, which permits him to argue that the impact of the scheme "is excessive with respect to the [regulatory] purpose." 372 U.S. at 169. But Smith expressly rejected the argument that "wide dissemination" of such information was excessive, finding a similar public notification system "reasonable in light of the nonpunitive objective." Smith, 538 U.S. at 103-05. Accordingly, we join every circuit to consider the issue and reject the main claim made by Parks.[4]

Parks next asserts that SORNA reaches beyond the limits of Congress' power under the Commerce Clause. See United States v. Lopez, 514 U.S. 549, 558-59 (1995). This court rejected such an

_____

[4]See United States v. Young, 585 F.3d 199, 204 (5th Cir. 2009); United States v. Hinckley, 550 F.3d 926, 936-37 (10th Cir. 2008), cert. denied, 556 U.S. 1240 (2009); United States v. May, 535 F.3d 912, 919 (8th Cir. 2008), cert. denied, 556 U.S. 1258 (2009); United States v. Lawrance, 548 F.3d 1329, 1333-34 (10th Cir. 2008); see also United States v. Cotton, 760 F. Supp. 2d 116, 135-36 (D.D.C. 2011), appeal dismissed, 2012 U.S. App. LEXIS 8464 (D.C. Cir. Apr. 9, 2012); United States v. Talada, 631 F. Supp. 2d 797, 806-08 (S.D.W. Va. 2009) aff'd, 380 Fed. App'x 255 (4th Cir. 2010), cert. denied, 131 S. Ct. 821 (2010).

argument in DiTomasso, concluding that SORNA was a legitimate exercise of Congress's Commerce Power as it is not dependant on indirect effects on commerce but "explicitly regulates the use of the channels of, and persons in, interstate commerce." 621 F.3d at 26. Although after Reynolds the Supreme Court vacated and remanded DiTomasso, it did so only because this court had deemed SORNA effective on enactment as to pre-SORNA offenders.

DiTomasso's reasoning on the Commerce Clause question remains the expressed position of this circuit even though the judgment was vacated on other grounds, see United States v. Adewani, 467 F.3d 1340, 1342 (D.C. Cir. 2006); cf. United States v. Franco-Santiago, 681 F.3d 1, 12 (1st Cir. 2012) (following United States v. Thurston, 358 F.3d 51, 63 (1st Cir. 2004), vacated on other grounds, 543 U.S. 1097 (2005)). Our resolution is also consistent with the judgment of every other circuit court to consider the matter.[5] Given the discussion in DiTomasso and the cases cited in the margin, further elaboration is unnecessary.

Next, Parks argues that SORNA as applied to him violates the Due Process Clause, because the two states among which he moved had not implemented the Act at the time of his violation. He says

---

[5] See, e.g., United States v. Coleman, 675 F.3d 615, 619-21 (6th Cir.), cert. denied, 2012 U.S. LEXIS 7021 (2012); United States v. Guzman, 591 F.3d 83, 89-91 (2d Cir.), cert. denied, 130 S. Ct. 3487 (2010); United States v. Shenandoah, 595 F.3d 151, 160-61 (3d Cir.), cert. denied, 130 S. Ct. 3433 (2010); United States v. Zuniga, 579 F.3d 845, 850 (8th Cir. 2009), cert. denied, 130 S. Ct. 3384 (2010); Hinckley, 550 F.3d at 939-40.

-11-

it would have been impossible for him to have registered in Maine and that he was denied constitutionally adequate notice of his duty to register.  But while SORNA requires the states to maintain sex offender registries along certain lines, every state <u>had</u> <u>a</u> sex offender registration law in place when SORNA became law. <u>DiTomasso</u>, 621 F.3d at 27.

Parks in fact registered under the Massachusetts law and could equally have registered under the Maine law when he moved there, as he was warned to do by a Maine police officer.  He lacked neither notice nor the means to comply with SORNA.  We rejected a like argument in <u>DiTomasso</u>, <u>see</u> <u>id.</u>, and <u>Gagnon</u>, <u>see</u> <u>Gagnon</u>, 621 U.S. at 33, and, once again, their authority in this circuit on this issue was not impaired by <u>Reynolds</u>' disagreement with the decisions on an entirely different issue.

Parks next claims that the Attorney General's statutory authority to apply the registration requirements to those convicted of sexual offenses before SORNA's enactment contravenes constitutional limitations on the delegation of legislative power. The pertinent precedents require that when Congress confers decision-making authority, it must "lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform."  <u>J.W. Hampton, Jr., & Co.</u> v. <u>United States</u>, 276 U.S. 394, 409 (1928).

SORNA provided such principle by specifying the regulatory policy that the registration system represents and by effectively delegating to the Attorney General the judgment whether this policy would be offset, in the case of pre-SORNA sexual offenders, by problems of administration, notice and the like for this discrete group of offenders--problems well suited to the Attorney General's on-the-ground assessment. All other circuits that have addressed the issue have rejected the delegation objection, which modern case law tends regularly to disfavor.[6]

Parks' final challenge is not to SORNA but to his own sentence. His concern here is not with his 35 month sentence but with the decision of the district court to make it consecutive to, rather than concurrent with, his 30 month sentence imposed by the Massachusetts state court for violating his state probation requirement by failing to update his Massachusetts sex offender registration.

Parks' first objection is that the district court was mistaken in assuming that he was obliged to make the sentence concurrent. The district judge, when asked to make the federal sentence concurrent, refused, saying: "What I'm going to do in this case, I take into account the lengthy sentence he is already

[6]See, e.g., United States v. Felts, 674 F.3d 599, 606 (6th Cir. 2012); United States v. Rogers, 468 Fed. App'x 359, 362 (4th Cir. 2012); Guzman, 591 at 93; United States v. Ambert, 561 F.3d 1202, 1213 (11th Cir. 2009); United States v. Whaley, 577 F.3d 254, 263-64 (5th Cir. 2009).

serving, and I believe that I'm precluded from making the sentences concurrent under the existing circumstances, though I wouldn't do it if I were permitted to do so." The Sentencing Guidelines do provide for a consecutive sentence, U.S.S.G. § 5G1.3, cmt. n.3(C), but the district court is now free under United States v. Booker, 543 U.S. 220 (2005), to disregard them.

Parks did not challenge the district court's premise at sentencing or invoke the Booker exception; but anyway the district judge's failure to acknowledge the exception did not prejudice Parks, see Fed. R. Crim. P. 52(a); United States v. Olana, 507 U.S. 725, 734-35 (1993), since the district court made clear that he would impose the consecutive sentence even if he were free to make the sentence concurrent. Where such an assurance is given by the district judge and we have no reason to think otherwise, this is enough. See United States v. Benedetti, 433 F.3d 111, 119 (1st Cir. 2005).

Parks argues that the district judge (doubting his ability to impose a concurrent sentence) could not fully have considered the ordinary sentencing factors. 18 U.S.C. § 3584(b) (incorporating by cross reference the list of factors prescribed by section 3553(a)); United States v. Rogers, 521 F.3d 5, 10-11 (1st Cir. 2008). But the district court shortened the consecutive sentence he might otherwise have imposed on account of the Massachusetts sentence, and his ultimate choice of a shortened but

consecutive sentence came after a thoughtful description of Parks, his crime and the very sentencing factors specified in the statute.

Parks also says that the sentence is substantively unreasonable, because both the probation offense of failing to update his registration in Massachusetts and the federal offense of crossing into Maine but not registering in Maine arose from the same course of conduct. But consecutive sentences are not uncommon in such situations, and the default position under the guidelines for Parks was a fully consecutive sentence. See U.S.S.G. § 5G1.3, cmt. n.3(C). Anyway, the district court's specific choice to add 35 months for the federal offense was amply explained.

Parks had an extensive criminal record of 29 prior convictions, including several crimes of a violent and sexual nature. He was on probation at the time the offense occurred and his stay in Maine was not a brief visit but an extended one. And he disregarded an express warning to register in Maine. The district court did not abuse his discretion and the sentence, being within the guideline range, did not violate the so-called "parsimony principle." United States v. Turbides-Leonardo, 468 F.3d 34, 41 (1st Cir. 2006), cert. denied, 551 U.S. 1170 (2007).

Affirmed.