# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

MARK ANTHONY VALVERDE,
*Defendant-Appellee.*

No. 09-10063

D.C. No.
2:08-cr-00187-
LKK-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
September 23, 2010—San Francisco, California

Filed December 27, 2010

Before: Mary M. Schroeder, Stephen Reinhardt and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Reinhardt

**COUNSEL**

Laurel D. White, Assistant U.S. Attorney, for the plaintiff-appellant.

Rachelle Barbour, Sacramento, California, and David Miles Porter, Assistant Federal Public Defender for the defendant-appellee.

---

**OPINION**

REINHARDT, Circuit Judge:

The Government appeals a decision of the district court dismissing the indictment of Mark Anthony Valverde ("Valverde") under the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq.*, on the ground that the registration and penalty provisions of the statute under which Valverde was charged, 42 U.S.C. § 16913; 18 U.S.C. § 2250(a)(2)(B), are invalid exercises of congressional power under the Commerce Clause. U.S. Const. art. I, § 8, cl. 3. We stayed this matter pending a decision on that issue in *United States v. George*, ___ F.3d ___, No. 08-30339, 2010 WL 4291497 (9th Cir. 2010). Valverde contends in addition that no valid statute or properly promulgated rule made SORNA's registration requirements applicable to him as of the time that he is charged with failing to register, specifically in January 2008.

We lift the stay issued pending the panel's decision in *George* and reject Valverde's Commerce Clause argument in light of that decision. We **AFFIRM**, however, the district court's dismissal of the indictment. We do so on the separate ground that the Attorney General's interim regulation of February 28, 2007 — applying SORNA's registration requirements retroactively to sex offenders, such as Valverde, who

were convicted before the statute's enactment — did not comply with the notice and comment procedures of the Administrative Procedure Act ("APA"), and did not qualify for the "good cause" exemption under 5 U.S.C. § 553(d)(3). As a result, the retroactivity provision did not become effective until August 1, 2008 —30 days after its publication in the final SMART guidelines along with the Attorney General's response to related public comments.

## I.   BACKGROUND

### A.   Factual Background

In 2002, Valverde pled guilty in California Superior Court to eleven counts of sexual abuse of a minor under 16 and one count of child pornography. He was sentenced to twelve years in prison. Prior to his release, Valverde signed a form notifying him that under California law he was required to register as a sex offender within five days of his release from prison, and that if he moved to another state, he was required to register there within ten days. Valverde was released in California in January 2008 with an instruction to report to a parole officer the next day. He did not report, however, and was apprehended later that month at his grandmother's house in Missouri, having registered as a sex-offender in neither California nor Missouri. Valverde's offenses under California law are not at issue in this case.

### B.   Procedural Background

In April 2008, defendant was indicted under SORNA, 42 U.S.C. § 16913, for having traveled, between January 6, 2008 and January 23, 2008, in interstate and foreign commerce and thereafter having knowingly failed to register as a sex offender as required by 18 U.S.C. § 2250. In February 2009, the district court dismissed the indictment, holding that neither 42 U.S.C. § 16913, which establishes the requirement that sex offenders register, nor 18 U.S.C. § 2250, which

imposes criminal penalties for the failure to register, are valid exercises of congressional authority to regulate interstate commerce. The district court reasoned that these registration and penalty provisions of SORNA did not fall under any of the three categories of activity that Congress may regulate pursuant to its commerce power, as set forth by the Supreme Court in *United States v. Lopez*, 514 U.S. 555 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000). The district court did not rule on Valverde's separate legal contention that no valid statute or properly promulgated rule made SORNA's registration requirements retroactively applicable to him as of the date that he is charged with failing to register under 42 U.S.C. § 16913.

## II. ANALYSIS

### A. Commerce Clause

[1] On September 29, 2010, this court held that the SORNA provisions that the district court in *Valverde* declared invalid under the Commerce Clause were legitimate exercises of Congress's commerce power. *United States v. George*, ___ F.3d ___, No. 08-30339, 2010 WL 4291497, at *3 (9th Cir. 2010) (reasoning that SORNA's registration requirements "are reasonably aimed at regulating persons or things in inter-state commerce and the use of the channels of interstate commerce." (citation and quotation marks omitted)). That holding controls here. We therefore hold that the district court erred in dismissing Valverde's indictment on the ground that 42 U.S.C. § 16913 and 18 U.S.C. § 2250 were an invalid exercises of congressional authority under the Commerce Clause.

[2] The remaining question at issue is when SORNA became effective retroactively to sex offenders convicted before the statute's enactment.[1] Having considered Valverde's

---

[1]The defendant in *George* did not raise, and neither party in that case briefed or argued the question of when SORNA's registration require-

argument that SORNA's retroactivity provision did not become valid until the APA's notice and comment requirements were satisfied, as well as having reviewed the Government's brief on that question, and having heard oral argument on that point from both parties, we now hold that the effective date of the retroactivity provision is the date on which that provision fulfilled the requirements of the APA.

## B.   Standard of Review

We need not decide the standard of review in order to determine the date on which the Attorney General's interim rule, 28 C.F.R. § 72.3 (2007), became effective in light of the notice and comment procedures of the APA. 5 U.S.C. § 553(b)(B), (d)(3). Valverde contends that we should apply a de novo standard of review, as we did in *Reno-Sparks Indian Colony v. E.P.A.*, 336 F.3d 899 (9th Cir. 2003). In that case, we considered the validity of rules issued by the Environmental Protection Agency that failed to comply with the Administrative Procedure Act's required notice and comment procedures. The Government argues that we should apply an "arbitrary, capricious, or abuse of discretion" standard, 5 U.S.C. § 706(2)(A), in reviewing the agency's — here, the Attorney General's — determination as to the effective date of its regulation. Because we would, under either standard, affirm the dismissal of the indictment on the ground that no validly promulgated regulation had applied SORNA retroactively to Valverde at the time of his failure to register, we need not determine whether a de novo or an abuse of discretion standard of review applies here.

## C.   Retroactive Application of SORNA to Valverde

**[3]** SORNA, which became effective on July 27, 2006, requires an individual convicted of a sex offense to "register,

---

ments became applicable to pre-enactment sex offenders. Rather, both parties assumed that the effective date was at the latest the date on which the interim regulation was promulgated. Accordingly, the *George* court, in a footnote, made that same assumption for purposes of its discussion regarding the Commerce Clause.

and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). The statute does not specify whether its registration requirements apply retroactively to a sex offender who, like Valverde, was convicted before the statute's effective date. 42 U.S.C. § 16913(b). Congress instead delegated to the Attorney General the "authority to specify the applicability of the requirements of [SORNA's registration requirements] to sex offenders convicted before [the statute's] enactment [on July 27, 2006] or its implementation in a particular jurisdiction" and the authority "to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with" the Act's registration requirements. 42 U.S.C. § 16913(d).

**[4]** Pursuant to this delegation of authority, on February 28, 2007, seven months after the statute's enactment, U.S. Attorney General Alberto Gonzales issued an interim rule applying SORNA to "all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. § 72.3. In issuing the interim rule, the Attorney General declined to comply with the procedural requirements of the APA. 5 U.S.C. § 551 *et seq*. Under the APA, rulemaking is generally required to comply with a three-step process: (1) notice of a proposed rule must be given by publication in the Federal Register, 5 U.S.C. § 553(b); (2) following publication of the proposed rule, 30 days must be provided for public comment; (3) notice of a final rule must be given by publication in the Federal Register, normally accompanied by a response to concerns raised in the public comments, "not less than 30 days before [the rule's] effective date . . . ." 5 U.S.C. § 553(d)(3). The APA permits an Agency to promulgate valid regulations without complying with these procedures, however, if it "for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice

and comment procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B).

The Attorney General relied upon the good cause exception in seeking to make the February 28, 2007 interim rule applying SORNA retroactively effective immediately and to render inapplicable the requirements for advance publication, public comment, and Agency response. 72 Fed. Reg. at 8895. In a statement accompanying the interim rule, the Attorney General did not state that notice and comment was "impracticable" or "unnecessary," but solely that it was "contrary to the public interest."

> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements — and related means of enforcement, including criminal liability under 18 U.S.C. § 2250 for sex offenders who knowingly fail to register as required — to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of 'protect[ing] the public from sex offenders and offenders against children' by establishing 'a comprehensive national system for the registration of those offenders,' SORNA § 102, because a substantial class of

sex offenders could evade the Act's mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.

72 Fed. Reg. at 8896-97. In issuing the interim rule, the Attorney General requested post-promulgation comments, but did not subsequently publish a response to any comments he may have received or publish the interim regulation in final form. Three months later, the Attorney General solicited comments when on May 30, 2007 he issued preliminary guidelines called Sentencing Monitoring, Apprehending, Registering, and Tracking ("SMART"), which proposed to apply SORNA's requirements retroactively. 72 Fed. Reg. 30,210. This time, the Attorney General responded to the comments about the retroactivity determination when he published the final SMART guidelines on July 2, 2008. 73 Fed. Reg. 38030, 38063.

[5] The parties do not dispute that Valverde was a sex offender by reason of his conviction under California law. Nor do they dispute that after Valverde's release, he knowingly traveled from California to Missouri, where he knowingly failed to register as a sex offender. Because SORNA did not specify whether it applied to individuals convicted of a sex offense before the statute's July 2006 enactment, but instead delegated that determination to the Attorney General, Valverde, having been convicted in 2002, was not subject to prosecution under SORNA until the Attorney General, pursuant to his delegated rulemaking authority under 42 U.S.C. § 16913(d), determined, in compliance with the APA, that SORNA's registration requirements applied retroactively to him and others convicted before the statute's enactment. *See United States v. Juvenile Male*, 590 F.3d 924, 929 (9th Cir. 2010) ("Congress delegated to the Attorney General the decision whether SORNA should apply retroactively to sex offenders who were convicted before the statute's effective date."). The issue is therefore whether there was a validly promulgated regulation that applied SORNA's registration

requirements retroactively to Valverde during the January 2008 period covered by his indictment for failure to register and for traveling in interstate commerce.

## III.

There are three instruments that might have been employed to make SORNA effective retroactively to offenders convicted before its enactment: (1) the interim rule issued on February 28, 2007; (2) the proposed SMART guidelines issued on May 30, 2007; and (3) the final SMART guidelines issued on July 2, 2008. The final SMART guidelines complied with the APA's procedural requirements; they were not yet in effect, however, at the time of the act charged in Valverde's indictment — his failure to register in January 2008. The Government does not contend that the May 30, 2007 preliminary SMART guidelines carried the force of law, and rightly so: they neither met the APA's notice and comment requirements, nor did the Attorney General seek to bypass those requirements by invoking the good cause exception with respect to these proposed guidelines.

This leaves only the February 28, 2007 interim rule. Valverde asserts that although his failure to register occurred after the publication of the interim rule, the issuance of that rule failed to comply with notice and comment procedure, notwithstanding the Attorney General's request for post-promulgation comments. *See Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005) ("It is antithetical to the structure and purpose of the APA for an agency to implement a rule first, and then seek comment later."). Valverde also contends that the Attorney General lacked the necessary "good cause" to bypass the notice and comment requirements under the APA. 5 U.S.C. § 553(b)(B), (d)(3).

The circuits are divided as to the validity of the Attorney General's February 28, 2007 interim rule. The Fourth, Seventh and Eleventh Circuits have ruled that the interim regula-

tion was valid, and the Sixth Circuit has ruled that it was not. *Compare United States v. Dean*, 604 F.3d 1275 (11th Cir. 2010)*; United States v. Gould*, 568 F.3d 459 (4th Cir. 2009); and *United States v. Dixon*, 551 F.3d 578 (7th Cir. 2008) *with United States v. Utesch*, 596 F.3d 302 (6th Cir. 2010).[2] Whether the Attorney General, in promulgating the February 28, 2007 interim rule, had good cause to waive the APA's procedural requirements, is a question of first impression in this Circuit.

**[6]** Our "inquiry into whether the [Agency] properly invoked 'good cause' proceeds case-by-case, sensitive to the totality of the factors at play." *Alcaraz v. Block*, 746 F.2d 593, 612 (9th Cir. 1984). The Agency must overcome a high bar if it seeks to invoke the good cause exception to bypass the notice and comment requirement. *See Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C. Cir. 2004) (holding that the good cause exception should be "narrowly construed and only reluctantly countenanced"). This court has recognized that a failure to comply with the APA's notice and comment procedures may be excused only in those narrow circumstances in which "delay would do real harm." *Buschmann v. Schweiker*, 676 F.2d 352, 357 (9th Cir. 1982) (quotation and citation omitted). As we have explained, "[t]he good cause exception is essentially an emergency procedure." *Id.* "Emergencies, though not the only situations constituting good cause," we have noted, "are the most common." *Natural Res. Def. Council, Inc. v. Evans*, 316 F.3d 904, 911 (9th Cir. 2003) (citations and quotation marks omitted).

We considered the good cause provision in *Hawaii Helicopter Operators Ass'n v. FAA*, 51 F.3d 212 (1995), in which

---

[2]The Fourth Circuit found the interim regulation valid over a strong and persuasive dissent by Judge Michael, and the Eleventh Circuit did so with a concurrence by Judge Wilson that supports the principal argument against "good cause." *See Gould*, 568 F.3d at 475-82 (Michael, J., dissenting) and *Dean*, 604 F.3d at 1282-87 (Wilson, J., concurring).

we held that the FAA had good cause to bypass notice and comment when it issued a regulation establishing special operating rules and procedures for airplane and helicopter tour operators in Hawaii. *See id.* at 214. In the three years prior to the issuance of the air safety regulation, Hawaii had experienced 20 air tour accidents resulting in 24 fatalities, including seven helicopter accidents involving four fatalities in the nine immediately preceding months. *See id.* We found it persuasive that the imminent threat to public safety posed by the increasing number of air tour accidents provided sufficient "basis for taking emergency action without waiting for public participation." *Id.*

## IV.

**[7]** In the present case, the Attorney General's statement accompanying the interim rule provided no rational justification for why complying with the normal requirements of the APA would have resulted in a sufficient risk of harm to justify the issuance of the February 28, 2007 retroactivity determination on an emergency basis. The Attorney General asserts that in promulgating the interim rule applying SORNA retroactively, compliance with notice and comment was "contrary to the public interest" under 72 Fed. Reg. at 8896. He offered two reasons: delay would (1) undermine assurance about the scope of SORNA's applicability, and (2) threaten public safety. *Id.* First, the "immediate effectiveness of th[e] [interim] rule is necessary," the Attorney General said, in order "to eliminate any possible uncertainty about the applicability of the Act's [registration] requirements [and penalty provisions] . . . to sex offenders whose predicate convictions predate the enactment of SORNA." *Id.* Second, by "imped[-ing] the effective registration of [ ] sex offenders [to whom coverage was extended under the interim rule][,]" delay in extending SORNA retroactively would "impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions." *Id.*

The Fourth, Seventh, and Eleventh Circuits held that the above two justifications relating to the provision of clarifying guidance and the promotion of public safety were sufficient to invoke the good cause exception by showing that compliance with the notice and comment requirement would have been contrary to the public interest. *See Gould*, 568 F.3d at 470 ("Delaying implementation of the regulation to accommodate notice and comment" would compromise "a need for legal certainty about SORNA's 'retroactive' application to sex offenders convicted before SORNA and a concern for public safety that these offenders be registered in accordance with SORNA as quickly as possible"); *Dean*, 604 F.3d at 1280-81 (concluding that the "public safety argument advanced by the Attorney General is good cause for bypassing the notice and comment period" because "the retroactive rule reduced the risk of additional sexual assaults and sexual abuse by sex offenders by allowing federal authorities to apprehend and prosecute them" and because "[t]he retroactive application of SORNA . . . removes a barrier to timely apprehension of sex offenders"); *see also Dixon*, 551 F.3d at 78 at 585 (assuming without argument that SORNA "was made applicable to . . . persons convicted of sex offenses before the Act went into effect . . . by the regulation issued by the Attorney General on February 28, 2007").

We strongly disagree with the conclusion reached by the courts that hold that compliance with the APA's notice and comment procedures would have controverted the public interest in this case. Like the Sixth Circuit and the dissenting judge in the Fourth Circuit, we find no plausible support for that conclusion in the Attorney General's statement accompanying the issuance of the interim rule that sought to apply SORNA retroactively to pre-enactment offenders. *See Utesch*, 596 F.3d at 309-10 (citing *United States v. Cain*, 583 F.3d 408, 421-23 (6th Cir. 2009); *Gould*, 568 F.3d at 481 (Michael, J., dissenting); *see also Dean*, 604 F.3d at 1287 (Wilson, J., concurring) (finding that "the Attorney General failed to show good cause to avoid notice and comment").

**a.**

**[8]** An interest in "eliminat[ing] any possible uncertainty" about the application of SORNA is not a reasonable justification for bypassing notice and comment. If "good cause" could be satisfied by an Agency's assertion that "normal procedures were not followed because of the need to provide immediate guidance and information[,] . . . then an exception to the notice requirement would be created that would swallow the rule." *Zhang v. Slattery*, 55 F.3d 732, 746 (2d Cir. 1995); *see also Cain*, 583 F.3d at 421 ("A desire to provide immediate guidance, without more, does not suffice for good cause."). There is little if any merit in the Attorney General's contention that it would have frustrated needed guidance about SORNA's retroactive applicability to have waited for notice and comment before issuing a final version of the interim rule. The Attorney General had already let seven months go by after SORNA's enactment before he issued the interim rule on February 28, 2007, and he gave no explanation for why immediate clarification was necessary. He cited no crisis of confusion about whether SORNA applied to pre-enactment offenders and no reason whatsoever to support an urgent need for guidance concerning the reach of the Act's registration requirements. That Congress, in delegating the authority to the Attorney General to determine SORNA's retroactive applicability, declined to eliminate the requisite compliance with the APA's procedures suggests that it did not find a need for immediate determinations by the Attorney General sufficient reason to circumvent public participation in the rulemaking process. *See Dean*, 604 F.3d at 1287 (Wilson, J., concurring) ("Congress's allocation of three years, plus extensions, to the states to comply with SORNA means Congress did not perceive an emergency."); *cf. Levesque v. Block*, 723 F.2d 175, 185 (1st Cir. 1983) ("[I]f Congress was troubled by th[e] prospect [of a delay in rulemaking], it could have mandated immediate implementation."). The Attorney General's request for post-promulgation comments in issuing the interim rule casts further doubt upon the authenticity and effi-

cacy of the asserted need to clear up potential uncertainty about whether SORNA applied retroactively.

**[9]** To the extent that the interim rule may have served an interest in providing clarification about SORNA's retroactive application to those states deciding whether to implement the Act, such guidance would not have been sufficient reason to invoke the good cause exception. Whereas states were afforded up to five years to implement SORNA, 42 U.S.C. § 16924(a), (b), our court has enforced the APA's procedural requirements under the Clean Air Act in circumstances in which states were given less than one year to draft implementation plans following the EPA's promulgation of a list of areas that failed to meet national air quality standards. *See W. Oil & Gas. Ass'n v. EPA*, 633 F.2d 803, 811 (9th Cir.1980). As Judge Michael observed in his dissent in *United States v. Gould*, "in spite of the Attorney General's hurried rulemaking, no state thus far has elected to implement SORNA, and the Attorney General recently granted a blanket one-year extension to all jurisdictions to allow substantial implementation of the Act." *Gould*, 568 F.3d at 480 (Michael, J., dissenting) (citation omitted). Nor could the immediate effectiveness of the interim rule be said to serve the interest of clarifying the Act's applicability to pre-SORNA sex offenders like Valverde, who received no notice whatsoever that their failure to register would subject them to substantial new penalties of federal prosecution and a prison term of up to ten years. *Cf. Omnipoint Corp. v. FCC*, 78 F.3d 620, 630 (D.C. Cir. 1996) ("the purpose of the thirty-day waiting period is to give affected parties a reasonable time to adjust their behavior before the final rule takes effect"). The Attorney General's interest in eliminating uncertainty does not justify his having sought to forego notice and comment.

**b.**

The Attorney General also asserted a public safety justification for why compliance with the APA's notice and comment

requirement would have been contrary to the public interest. In offering this public safety justification, the Attorney General did little more than restate the general dangers of child sexual assault, abuse, and exploitation that Congress had sought to prevent when it enacted SORNA on July 27, 2006. He gave no reason why the Act's requirements should be made retroactively applicable on an emergency basis when Congress had declined to do so. He pointed to no changes in the regulatory regime; no increase in the incidence of sex offenses; no reports of underprosecution or underenforcement against pre-enactment offenders; no facts to support the asserted "greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA," 72 Fed. Reg. at 8896-97, that were not already before Congress when it delegated rulemaking authority to the Attorney General in accordance with the APA's procedural requirements.

[10] We agree with the Sixth Circuit that "[t]he conclusory speculative harms the Attorney General cites are not sufficient to upset th[e] balance" of costs and benefits that Congress considered in declining to make SORNA retroactive immediately and instead delegating the retroactivity determination to the Attorney General pursuant to the APA's procedural requirements. *Cain*, 583 F.3d at 421. As Judge Michael explained in his dissent, the interim rule

> did not have the immediate effect of compelling any additional sex offenders to register; nor did it provide any additional registration information either to states or to the federal government. The announcement of the rule merely allowed the federal government to prosecute under SORNA sex offenders who were currently violating state registration laws and thus were already subject to prosecution under existing state laws.

*Gould*, 568 F.3d at 478 (Michael, J., dissenting). In addition to concurrent registration requirements under existing state

laws, the federal government already had authority under Megan's Law, 42 U.S.C. § 14071 et seq., to prosecute virtually any offender subject to prosecution for interstate travel under SORNA. *Compare* 42 U.S.C. § 14072(g), (i) (Megan's Law) (providing for federal criminal prosecution of any person who knowingly fails to register under a state's sexual offender registration program and who changes address to another state) *with* 18 U.S.C. § 2250(a) (SORNA) (providing for prosecution of any sex offender who knowingly fails to register or update a registration as required by SORNA and "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country").

**[11]** Judge Wilson of the Eleventh Circuit, echoing the reasoning of the Sixth Circuit and Judge Michael of the Fourth Circuit, observed that "[t]he issue is not whether sex offenders should register, but rather whether the addition of one more layer of federal protection atop a substantial quilt of existing state and federal laws merited emergency treatment." *See Dean*, 604 F.3d at 1283 (Wilson, J., concurring). Judge Wilson convincingly reasoned that "the existence of stringent state and federal criminal sanctions on the books at the time the [interim] regulation was promulgated obviated the case for an emergency." *Id.* (footnote omitted).[3] The Attorney General

---

[3]Judge Wilson concluded that although the Attorney General did not have good cause to promulgate the interim rule on an emergency basis, this failure to satisfy the notice and comment requirement amounted to harmless error. *Dean*, 604 F.3d at 1288-89 (Wilson, J., concurring). He reasoned that the defendant in *Dean* was not prejudiced by the invalidity of the interim rule under the APA because (1) he "didn't show what comment he might have made on the interim rule," *id.* at 1289, and (2) he did not provide "a reason he could have offered that might have persuaded the Attorney General not to extend SORNA to cover pre-enactment convictions." *Id.* at 1288. The Government in the instant case did not raise an argument that the absence of good cause for seeking to avoid notice and comment could be excused by harmless error, and we do not consider that proposition here. We agree, however, with the Sixth Circuit, which expressly held that "the interim regulation's procedural deficiencies were not harmless," *id.* at 313, because, in relevant part, "[t]he fact that the Attorney General eventually made SORNA retroactive through legitimate means cannot sustain prosecution of an individual based on conduct committed long before the final guidelines' enactment." *Id.* at 312.

provided no reason why, in view of the existing statutory regime that already imposed registration requirements on pre-SORNA sex offenders, it was necessary for the interim rule to be made effective immediately, without providing any opportunity for notice and comment. It is difficult to see what substantial public safety interest was served by overriding Congress's willingness to allow the Attorney General to issue rules regarding retroactivity in the normal course, including the notice and comment waiting period provided by the APA.

## V.

**[12]** Having failed to identify any "rational connection between the facts found and the choice made" to promulgate the interim rule on an emergency basis, *Natural Res. Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1297 (9th Cir. 1992) (quoting *Sierra Pacific Indus. v. Lyng*, 866 F.2d 1099, 1105 (9th Cir. 1989) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))), we conclude that the Attorney General committed a clear error of judgment in failing to consider the factors relevant for seeking to bypass the APA's notice and comment requirement. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Because neither the asserted interest in clarifying SORNA's applicability nor the asserted need to protect public safety plausibly constituted good cause for bypassing the APA's procedural requirements, we hold that the interim rule failed to comply with the APA's notice and comment procedures. Accordingly, SORNA did not become effective against pre-enactment offenders like Valverde until August 1, 2008, thirty days after publication of the final SMART guidelines along with the Attorney General's response to comments. As there was no properly promulgated regulation rendering SORNA's registration requirements applicable to Valverde in January 2008, we affirm the district court's dismissal of his indictment.

**AFFIRMED.**