# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1261

_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Lamont Brewer

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: April 16, 2014
Filed: September 10, 2014

_____

Before WOLLMAN, BYE, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Kevin Brewer was convicted of failing to register as a sex offender under 18 U.S.C. § 2250(a) and sentenced to 18 months in prison and 15 years of supervised release. Brewer moved to vacate his conviction under 28 U.S.C. § 2255. The district court denied the motion. Brewer then moved to reconsider and requested a certificate of appealability. The district court denied Brewer's motion to reconsider but granted

Brewer a certificate of appealability on two issues. Having jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I. Background

In 2006, Congress enacted the Sex Offender and Registration Notification Act ("SORNA"), which established a national registration system for persons convicted of sex offenses under state and federal laws. 42 U.S.C. §§ 16901–16991. SORNA "requires those convicted of certain sex crimes to provide state governments with (and to update) information, such as names and current addresses, for inclusion on state and federal sex offender registries." Reynolds v. United States, 132 S. Ct. 975, 978 (2012). Specifically, under SORNA, a person is criminally liable for failure to register if he (1) is required to register under SORNA; (2) is a sex offender by reason of a federal conviction or, alternatively, is a person who "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country"; and (3) "knowingly fails to register or update a registration as required" by SORNA. 18 U.S.C. § 2250(a).

SORNA's registration requirements were not immediately applicable to persons who, like Brewer, were convicted of a sex offense prior to the enactment of SORNA. Reynolds, 132 S. Ct. at 978. SORNA mandated that the registration requirements would not apply to "pre-Act offenders until the Attorney General specifies that they do apply." Id.; see also 42 U.S.C. § 16913(d) (granting the Attorney General rule-making authority regarding applicability). On February 28, 2007, the Attorney General promulgated an Interim Rule that made registration requirements applicable to all pre-Act offenders. See 72 Fed. Reg. 8894, 8897 (Feb. 28, 2007). The Attorney General did not establish a period for pre-promulgation notice and comment and bypassed the 30-day publication requirement because, he asserted, there was "good cause" to waive those requirements. See 72 Fed. Reg. 8894, 8896–97. Three months later the Attorney General published the

proposed "SMART" Guidelines to "interpret and implement SORNA." 72 Fed. Reg. 30,210 (May 30, 2007); see United States v. Knutson, 680 F.3d 1021, 1023 (8th Cir. 2012). The "SMART" Guidelines became effective on August 1, 2008, and "reaffirmed the interim rule applying SORNA to pre-Act offenders." Knutson, 680 F.3d at 1023; see 73 Fed. Reg. 38,030 (July 2, 2008).[1] Though the Attorney General maintained that SORNA had been effective to all pre-Act offenders all along, the Supreme Court in Reynolds rejected that position and held that SORNA's registration requirements did not apply to pre-Act offenders until the Attorney General issued a rule saying so. See Reynolds, 132 S. Ct. at 984.

Brewer currently is required to register under SORNA because of a 1997 conviction for a sex offense in Hawaii. At the time of SORNA's enactment, Brewer was living in South Africa. In December 2007, he moved back to the United States and settled in Arkansas, but he did not register as a sex offender. He was arrested in March 2009 and pleaded guilty in September 2009.

Following his release from prison, Brewer moved to vacate his sentence under 28 U.S.C. § 2255. As relevant to this appeal, Brewer argued that (1) the Attorney General lacked "good cause" and thereby violated the Administrative Procedures Act (APA) when he promulgated and made effective the Interim Rule without allowing for the required public notice-and-comment period and minimum 30-day publication period, and (2) SORNA violates the nondelegation doctrine by providing the Attorney General with the authority to determine when, and if, SORNA will apply to pre-SORNA offenders. The district court adopted the magistrate judge's report and denied Brewer's motion to vacate on all grounds. Brewer then moved for reconsideration and asked the district court for a certificate of appealability. The

---

[1] Subsequently, the Attorney General has issued a "Final rule," which mirrors the language of the Interim Rule. 75 Fed. Reg. 81,849 (Dec. 29, 2010); see also Knutson, 680 F.3d at 1023.

district court declined to reconsider its earlier ruling but certified for appeal the two issues stated above.

## II. Discussion

We review de novo the district court's denial of a motion under section 2255. United States v. Hernandez, 436 F.3d 851, 855 (8th Cir. 2006). Any underlying factual findings are reviewed for clear error. Id.

On appeal Brewer maintains that the Attorney General's Interim Rule is invalid and, therefore, his conviction is illegal. Brewer presses the same grounds for vacating his conviction that he argued in the district court: (1) the "Interim Rule violated the [APA] because Appellant was prejudiced by the Attorney General's failure to comply with the required procedures for substantive rulemaking and failure to provide sufficient good cause for avoiding those procedures";[2] and (2) "[c]ontrary to Circuit precedent, [SORNA] violates nondelegation doctrine with regards to state sex offenders whose prior conviction pre-dates the enactment or implementation of the Act." We address each of his arguments in turn.

---

[2] The government asserted in the district court that Brewer had procedurally defaulted this argument by failing to raise it on direct appeal. The magistrate judge did not consider the issue defaulted and recommended addressing the merits of Brewer's argument. The government did not object to the magistrate judge's recommendation, did not cross-appeal the district court's order adopting the magistrate judge's report, and does not maintain on appeal that Brewer's APA argument is defaulted. Thus, we believe the government has waived procedural default as an affirmative defense and will not further address the issue. See Jones v. Norman, 633 F.3d 661, 666 (8th Cir. 2011).

## A. Good Cause[3]

As a state-law sex offender, Brewer is guilty of failing to register under SORNA if he "travels in interstate or foreign commerce" while knowingly failing to register or update his registration. 18 U.S.C. § 2250(a)(2)(B). Brewer suggests, however, that SORNA was not yet effective as to him when he traveled from Africa to Arkansas in December 2007 because, he argues, the Interim Rule, which for the first time made SORNA applicable to sex offenders convicted before the Act's enactment, is invalid. Because the "final rule" did not become effective until August 2008, Brewer cannot be guilty under that rule for his December 2007 move. Thus, if the Interim Rule is invalid, then Brewer's conviction also is invalid.

Brewer asserts that the Interim Rule is invalid because the Attorney General failed to comply with the APA rulemaking procedures without good cause. We review de novo whether an agency has complied with the APA's procedural requirements because compliance "is not a matter that Congress has committed to the agency's discretion." Iowa League of Cities v. EPA, 711 F.3d 844, 872 (8th Cir. 2013). "Agencies must conduct 'rule making' in accord with the APA's notice and comment procedures." Id. at 855 (citing 5 U.S.C. § 553(b), (c)). "The APA's rulemaking provisions require three steps to enact substantive rules: notice of the proposed rule, a hearing or receipt and consideration of public comments, and the publication of the new rule." United States v. DeLeon, 330 F.3d 1033, 1036 (8th Cir.

---

[3] Brewer argues on appeal not only that the Attorney General lacked good cause but also that the issue of good cause is foreclosed on appeal because the government failed to object to the magistrate judge's report and recommendation or cross-appeal the district court's adoption of that ruling. As a result, Brewer asserts that he must prevail on this issue. But the district court did not explicitly find that the Attorney General had good cause. Rather, the district court held that even if the Attorney General lacked good cause, the error was harmless. Thus, we address this issue on appeal.

2003).  The third step, publication of a new substantive rule, must be completed "not less than 30 days before [the rule's] effective date."  See 5 U.S.C. § 553(d).

An agency may waive the requirements of a notice and comment period and the 30-day grace period before publication if the agency finds "good cause" to do so.  See 5 U.S.C. § 553(b)(B), (d)(3).  We have cautioned, however, that courts should not conflate the pre-adoption notice-and-comment requirements, listed in § 553(b) and (c), with the post-adoption publication requirements, listed in § 553(d).  United States v. Gavrilovic, 551 F.2d 1099, 1104 n.9 (8th Cir. 1977).  Because these are separate requirements, the agency must have good cause to waive each.

We note that there is a conflict among the circuits regarding the appropriate standard of review for an agency's assertion of good cause under § 553(b)(B).  We have in the past deferred to the agency's determination and reviewed only "whether the agency's determination of good cause complies with the congressional intent" in § 553(d).  Gavrilovic, 551 F.2d at 1105.  This deferential standard appears similar to the approach taken by the Fifth and Eleventh Circuits, which each used an arbitrary-and-capricious standard found in 5 U.S.C. § 706(2)(A).  See United States v. Reynolds (Reynolds II), 710 F.3d 498, 506–07 (3d Cir. 2013) (collecting and reviewing conflicting standards of review).  The Fourth and Sixth Circuits, however, applied de novo review and cited § 706(2)(D).  Id. at 507.  While we recognize that this division is unhelpful, we agree with the Third Circuit that the Attorney General's assertion of good cause fails under any of the above standards.

In promulgating the Interim Rule, the Attorney General asserted good cause to waive the procedural requirements and make the rule effective immediately:

> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements—and related means of enforcement, including criminal

-6-

liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required—to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.

It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. 553(b) or with the delayed effective date normally required under 5 U.S.C. 553(d).

72 Fed. Reg. 8894, 8896–97. Thus, the Attorney General offered two rationales for waiving the requirements: (1) the need to eliminate "any possible uncertainty" about the applicability of SORNA; and (2) the concern that further delay would endanger the public. Id.

The appellate courts are divided over whether the Attorney General's justifications for extending SORNA to all pre-Act offenders without adhering to the requirements of the APA were sufficient. The parties' arguments in this appeal largely track the divide in the circuits. Two circuits, the Fourth and the Eleventh, have held that the Attorney General had good cause to bypass the notice and comment

provisions.[4]  In United States v. Gould, the Fourth Circuit noted that there was some ambiguity about SORNA's effectiveness and reasoned that the Interim Rule was necessary to provide "legal certainty about SORNA's 'retroactive' application." 568 F.3d 459, 469–70 (4th Cir. 2009).  Similarly, in United States v. Dean, the Eleventh Circuit held that the Interim Rule served to promote public safety and that the public safety exception applied not only to true "emergency situations" but also to situations "where delay could result in serious harm."  604 F.3d 1275, 1281 (4th Cir. 2010) (quoting Jifry v. F.A.A., 370 F.3d 1174, 1179 (D.C. Cir. 2004)).  The court found that despite the long delay between SORNA's passage and the promulgation of the Interim Rule, the Attorney General "reasonably determined that waiting thirty additional days for the notice and comment period to pass would do real harm." Id. at 1282–83.

In contrast, four circuits—the Third, Fifth, Sixth, and Ninth—have found that the Attorney General's stated reasons for finding good cause to bypass the 30-day advance-publication and notice-and-comment requirements—alleviating uncertainty and protecting the public safety—were insufficient.  See Reynolds II, 710 F.3d at 509; United States v. Johnson, 632 F.3d 912, 928 (5th Cir. 2011); United States v. Valverde, 628 F.3d 1159, 1168 (9th Cir. 2010);  United States v. Cain, 583 F.3d 408, 421–24 (6th Cir. 2009).  We agree with these circuits that the Attorney General lacked good cause to waive the procedural requirements.

The Attorney General's first rationale, the need to eliminate "uncertainty" about the law, simply reflects a generalized concern that exists any time an act requires further substantive rulemaking.  There always will be some level of

---

[4] The Seventh Circuit also has suggested that the Interim Rule was effective immediately.  See United States v. Dixon, 551 F.3d 578 (7th Cir. 2008), rev'd on other grounds sub nom., Carr v. United States, 560 U.S. 438 (2010). The court rejected the defendant's APA argument as "frivolous" but did not elaborate on its reasoning. Id. at 583.

uncertainty about the breadth and timing of applicability until the agency has promulgated a rule. See Reynolds II, 710 F.3d at 510 ("[S]ome uncertainty follows the enactment of any law that provides the agency with administrative responsibility."). But in this situation, "[t]he desire to eliminate uncertainty, by itself, cannot constitute good cause." Id. "If good cause could be satisfied by an Agency's assertion that normal procedures were not followed because of the need to provide immediate guidance and information[,] . . . then an exception to the notice requirement would be created that would swallow the rule." Valverde, 628 F.3d at 1166 (internal quotation marks omitted). Congress could have alleviated this uncertainty by providing that SORNA be immediately applicable to all pre-Act offenders. Instead, Congress granted the Attorney General discretion to decide how, and if, SORNA would apply to pre-Act offenders. As such, this level of uncertainty inherent in the Congressional directive itself cannot constitute an emergency or public neccesity.

We also note that the Attorney General did not actually find a concrete uncertainty to remedy but rather was acting to "eliminat[e] any *possible* uncertainty." 72 Fed. Reg. 8894, 8896–97 (emphasis added). There is a difference between addressing present legal uncertainty and addressing the possibility of future legal uncertainty. Although the risk of future harm may, under some circumstances, justify a finding of good cause, that risk must be more substantial than a mere possibility.

Similarly, the Attorney General's "public safety rationale cannot constitute a reasoned basis for good cause because it is nothing more than a rewording of the statutory purpose Congress provided in the text of SORNA." Reynolds II, 710 F.3d at 512. The Attorney General posited that delay in implementing the Interim Rule "would impair immediate efforts to protect the public from sex offenders who fail to register." 72 Fed. Reg. 8894, 8896–97. But delay in implementing a statute always will cause additional danger from the same harm the statute seeks to avoid. And the

Attorney General's stated concern for public safety further is undermined by his own seven-month delay in promulgating the Interim Rule. Moreover, just as the Attorney General failed to show any substantial risk of uncertainty about SORNA's application to pre-Act offenders, his concern for public safety fails to "point to something specific that illustrates a particular harm that will be caused by the delay required for notice and comment." Reynolds II, 710 F.3d at 513.

We thus conclude that, even under an arbitrary and capricious standard of review, there is an insufficient showing of good cause for bypassing the APA's requirements of notice and comment and pre-enactment publication.

## B. Prejudice

In the alternative, the government argues that any violation of the APA's procedural requirements was harmless to Brewer. The APA instructs courts reviewing agency action to take "due account . . . of the rule of prejudicial error." 5 U.S.C. § 706; see Shinseki v. Sanders, 556 U.S. 396, 406–07 (2009) (explaining that intent of APA's reference to "prejudicial error" is to summarize harmless-error rule applied by courts). Because the underlying matter in this case involves a criminal conviction, the government bears the burden of showing that there was no prejudicial error. See Reynolds II, 710 F.3d at 515–16; see also Sanders, 556 U.S. at 410–11 (noting that in criminal matters, the government has the burden of showing harmless error because of the defendant's liberty interest at stake).

The minimum publication period required prior to a rule becoming effective is 30 days. 5 U.S.C. § 553(d). Since the Interim Rule was issued on February 28, 2007, the government argues that if it had observed proper procedure, the Interim Rule would have become effective 30 days later on March 30, 2007. Because Brewer did not violate the act until December 2007, the government contends, it is irrelevant

-10-

to Brewer's conviction whether the rule became effective immediately in February or later in March. We agree. Brewer's violation of the Interim Rule occurred nine months after it would have gone into effect. The absence of those extra thirty days between effectuation and violation did not result in any prejudice to him.

But the Attorney General also bypassed the requirement of a period for notice and comment. To support its position that this error also was harmless, the government primarily relies on the Fifth Circuit's decision in United States v. Johnson, 632 F.3d 912. In Johnson, the Fifth Circuit found that any procedural error as to the notice-and-comment provision was not prejudicial because the Attorney General had "thoroughly engage[d] the issues and challenges inherent in the regulation" when enacting the Interim Rule. 632 F.3d at 931. Because the Attorney General had "considered the arguments . . . asserted and responded to those arguments during the interim rulemaking," albeit without notice and comment, the Fifth Circuit held that "the error in failing to solicit public comment before issuing the rule was not prejudicial." Id. at 932.

In its brief on appeal, the government here argues:

> Like Johnson, Brewer fails to show he involved himself in the post-promulgation comment period. Neither does Brewer allege or show that he participated in the Attorney General's subsequent rulemaking process that crafted regulations regarding the more detailed provisions of SORNA, in which the Attorney General also considered the retroactivity of SORNA, free of APA error. Finally, because Brewer makes no showing that the outcome of the process would have differed had notice and comment been proper, it is clear that the Attorney General's alleged APA violations would be harmless error as applied to him.

We disagree with the government. We first note that the Attorney General's failure to follow the APA's pre-promulgation requirements was a "complete failure," compared to a "technical failure." See Reynolds II, 710 F.3d at 516–17. It is not that the method of allowing notice and comment was flawed; rather, there was no method at all. Because there was no period during which Brewer, or anyone else, could have offered comments before the Interim Rule was promulgated, he does not need to show that any hypothetical comments would have changed the rationale underlying that rule. Id. at 516 (citing Shell Oil Co. v. EPA, 950 F.2d 741, 752 (D.C. Cir. 1991)).

Second, the government's argument improperly shifts to Brewer the burden to show that the outcome of the process would have been different with the proper procedures. Moreover, it is irrelevant that Brewer did not participate in the post-promulgation comment period. As we earlier noted, his only movement in interstate or foreign commerce occurred after the Interim Rule had been promulgated but before the Final Rule was published. Thus, Brewer could not be guilty of violating the final rule, which is the only rule that may have been affected by the post-promulgation comments. The only notice-and-comment period relevant to his conviction is the one that the Attorney General failed to provide before promulgation of the Interim Rule.

Nor can we accept the government's assumption that the enacted rule certainly would have been the same. Contrary to the government's contention, the Attorney General did not face a simple "yes or no" decision. Compare Johnson, 632 F.3d at 932, with Reynolds II, 710 F.3d at 520–21. In fact, the Attorney General had a range of options: from applying SORNA to all pre-Act offenders to applying SORNA to no pre-Act offenders. The Attorney General also had the opportunity to distinguish between "'offenders who have fully left the system and merged into the general population'" and those "'who remain in the system as prisoners, supervisees, or registrants, or reenter the system through subsequent convictions.'" Reynolds II, 710

F.3d at 521 (quoting the "SMART" Guidelines, 73 Fed. Reg. 38,030, 38,035 (July 2, 2008), which note the Attorney General's ability to distinguish between prior offenders on the basis of status). Given this range of choices, we do not believe that the Attorney General's final choice was inevitable or that the outcome certainly would have been the same had there been a period for notice and comment.

Brewer argues that "even if confronted with just a binary question, the Attorney General did not give both options full consideration." We agree. As Brewer notes, at the time the Interim Rule was promulgated, the Attorney General was persisting in his view that no rulemaking was needed for SORNA to apply to pre-Act offenders. See United States v. May, 535 F.3d 912, 919 (8th Cir. 2008) ("The Attorney General did not believe a rule was even needed to confirm SORNA's applicability to defendants [including pre-Act offenders]. Rather, the Attorney General only promulgated the rule as a precautionary measure to '*foreclose* [ ] such claims [of pre-Act offenders] by making it *indisputably clear* that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted.'" (first alteration in original) (quoting 72 Fed. Reg. at 8896)), abrogated in part by Reynolds, 132 S. Ct. 975. The Attorney General's attempt to foreclose the possible claims of pre-Act offenders seems incompatible with his duty seriously to consider whether SORNA applies to those offenders, and if so, which ones. Such an approach certainly does not suggest the sort of "flexible and open-minded attitude towards its own rules," that is generally required for the notice-and-comment period. See Prometheus Radio Project v. FCC, 652 F.3d 431, 449 (3d Cir. 2011) (internal quotation marks omitted). Based on the record before us, we cannot say the immediate effectiveness of the Interim Rule was harmless as to Brewer.

In sum, the Attorney General lacked good cause to waive the procedural requirements of notice and comment when promulgating the Interim Rule, and this

procedural error prejudiced Brewer. As a result, SORNA did not apply to Brewer in 2007, so his conviction for failing to register is invalid.

## C. Nondelegation Doctrine

Because we conclude that the Attorney General lacked good cause to bypass the APA's procedural requirements, we need not address Brewer's second argument that SORNA violates the nondelegation doctrine. We note, however, that Brewer acknowledges that his argument is contrary to this circuit's precedent. See United States v. Kuehl, 706 F.3d 917 (8th Cir. 2013) (concluding that SORNA did not violate the nondelegation doctrine).

## III. Conclusion

For the reasons discussed above, we reverse the district court's denial of Brewer's motion under § 2255 and remand. The district court is ordered to vacate Brewer's conviction.

_____